BANK OF KENTUCKY v. STONE et al.

(Circuit Court, D. Kentucky. June 4, 1898.)

No. 6,555.

1. INJUNCTION AGAINST TAXATION—EQUITY JURISDICTION.

A suit in the federal court to enjoin the collection of a tax will not lie on the sole ground that it is illegal and void. It must appear from the special circumstances averred that there is no adequate remedy at law, and that there is some recognized ground of equity jurisdiction, such as that the enforcement of the tax would lead to a multiplicity of suits or produce irreparable injury.

2. SAME—ACTION TO RECOVER BACK.

In Kentucky an action to recover taxes paid does not lie except when the payment has been made under duress of a distraint made by the collection officers.

3. SAME—ADEQUACY OF REMEDY AT LAW.

In a state where an action to recover taxes paid will only lie when they have been paid under duress of a distraint, such remedy is not an adequate one where the taxing officers, instead of distraining, may bring an action at law to collect the tax. A remedy at law cannot be adequate if its adequacy depends upon the will of the opposing party.

4. SAME—ACTION AT LAW BY TAXING OFFICERS.

The right to defend against an action at law to collect taxes on the ground of the invalidity of the statute under which they were assessed is not an adequate remedy when the statute, like the Kentucky revenue law of November 11, 1892, provides that the party failing to pay the tax within a specified time shall be subject to a penalty and to a fine for each day of delay, to be enforced by indictment or civil action.

**5. SAME—DISTRAINT AGAINST BANK.**

In a state where payment of taxes is held to be voluntary unless made under duress of a distraint, it would seem that the right of action to recover back a tax levied against a bank is an inadequate remedy, in view of the interference with its business and the injury to its credit which would be caused by a distress upon its personal property.

**6. SAME—MULTIPLICITY OF SUITS.**

Where a party claims that its exemption from taxation under the particular statute in question has been established by prior adjudications of the highest court of the state, the fact that it is threatened with suits for future taxes under such statute, and also with the danger of harassing suits for fines and penalties, which the statute permits to be brought for each day's delay in paying the taxes, would seem to afford sufficient ground for equitable intervention.

**7. RES JUDICATA—SUITS FOR COLLECTION OF TAXES.**

A judgment in a suit for collection of taxes operates as an estoppel against the state or any agency of the state in a suit for taxes subsequently accruing. City of New Orleans v. Citizens' Bank of Louisiana, 17 Sup. Ct. 905, 167 U. S. 371, followed.

**8. SAME—MATTERS CONCLUDED.**

A judgment that a statutory provision exempting "such bank and its shares of stock * * * from all other taxation whatsoever" is an irrevocable contract, which prevents the imposition of a license tax, is conclusive, in a subsequent suit, that no direct tax on the bank's property, tangible and intangible, can be imposed.

**9. SAME—PARTIES CONCLUDED.**

A judgment enjoining a town and county from enforcing an illegal tax is conclusive in a subsequent suit to restrain the board of assessors of such county and town from certifying such a tax for collection. The members of the board, being but the agents of the real parties in interest, are, in respect to the former judgment, privy to the county and city.

**10. SAME—WRIT OF PROHIBITION.**

A writ of prohibition was brought to prevent the judge of a city court from proceeding in a criminal case to enforce collection of a tax. From the judgment entered, an appeal was taken, to which the city, being the real party in interest, became also a formal party, and the judgment was affirmed. *Held,* that this judgment was conclusive, in a subsequent proceeding, upon the city itself.

**11. JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTIONS.**

In a suit to enjoin the collection of a tax, complainant alleged that it had a contract with the state in respect to taxation, the obligation of which defendants were attempting to impair by seeking to enforce a subsequent law of the state. The court held that a certain prior adjudication of the state court was conclusive on the parties that the law in question impaired the obligation of the contract, and therefore did not re-examine that question as an original one between the parties. *Held,* that this conclusion did not oust the court's jurisdiction, although based solely on the ground that it involved a question arising under the constitution or laws of the United States.

**12. SAME—FEDERAL COURTS—FOLLOWING STATE DECISIONS—RES JUDICATA.**

The rule that, in considering the question whether a state law impairs the obligation of a contract, the federal court will not accept as conclusive the construction which the supreme court of the state has put upon its constitution or laws in determining the existence of the contract and its violation, applies only where the judgment of the state court is under direct review, or where its opinion is merely cited as an authority, and not to a case in which a prior judgment of the state court between the same parties is set up as res judicata.

**13. SAME—ENJOINING STATE COURTS.**

The fact that a proceeding by mandamus is pending in a state court to compel a city and its board of valuation and assessment to certify the apportioned valuation of a bank for purposes of taxation does not render a

suit subsequently instituted by the bank, to restrain the city and the board of valuation from taking this action, a suit to enjoin the proceedings in a state court.

This is a bill in equity filed by the Bank of Kentucky, a corporation organized under the laws of Kentucky, to restrain the assessment and collection of certain taxes for the benefit of the defendants the city of Louisville, the county of Franklin, and the city of Frankfort. Samuel H. Stone is the auditor of public accounts for the state of Kentucky, Charles Finley is the secretary of state, and George W. Long is the state treasurer; and these three officers, also made defendants herein, constitute the state board of valuation and assessment. The bill avers that the complainant has an irrevocable contract with the state of Kentucky, by which taxes are limited to a certain amount per share upon its stock, and the usual local taxes on its real estate, but that the revenue act of the legislature of Kentucky passed November 11, 1892, impairs that contract, and is in violation of the constitution of the United States.

The case made by the bill is as follows:

The complainant was created a body politic and corporate by an act of the general assembly of Kentucky approved February 22, 1834. The term of its corporate existence was fixed at 30 years from the date of its incorporation. It was authorized to do a banking business and to issue bank notes. It was directed to keep its principal office of discount and deposit in the city of Louisville, and to locate a branch at Frankfort, the seat of the government, to aid and manage the fiscal affairs of the state. The state was given a voice in the control of the bank by a provision that the government of the commonwealth should appoint three of the bank's directors. By the fifteenth section of the original charter it was provided that the bank should pay to the treasurer of the commonwealth 25 cents on each $100 of stock held and paid for in said bank, which should be in full of all tax and bonus, provided that the legislature might increase or diminish the same; but that at no time should the tax exceed 50 cents on each $100 of stock paid for in said bank. By an act of February 12, 1836, the tax was increased to 50 cents a share. By the act of February 15, 1858, it was provided that the charter privileges of the complainant should continue in full force for 20 years from October 1, 1864; but this extension was declared to be granted on certain conditions. The extension was duly accepted by complainant. On May 17, 1886, an act called the "Hewitt Act" was passed, to make taxation equal and uniform. It provided that all state and national banks should pay into the state treasury 75 cents on each share of their capital stock, and should, in addition, pay into said treasury, on their surplus, undivided profit, and accumulations in excess of 10 per cent. of their capital stock, a tax at the same rate as that assessed on real property: and that the said taxation should be in full of all tax,—state, county, and municipal,—except that the real estate and buildings owned and used by the banks in conducting their business should not be exempted from taxation for municipal or county purposes; and that such real estate alone might be taxed for county and municipal purposes, as other real estate was taxed. The fourth section of the second article of the act provided that each of the banks, institutions, and corporations, by its proper corporate authority, with the consent of a majority in interest of a quorum of its stockholders at a regular or called meeting thereof, might give its consent to the levying of said tax, and agree to pay the same, and waive and release all right under the act of congress or under the charters of the state banks, to a different mode or a smaller rate of taxation, which consent and agreement to and with the state of Kentucky should be evidenced by writing, under the seal of said bank, and delivered to the governor of the commonwealth before the next meeting of the legislature; and said agreement and consent being delivered, and in consideration thereof, such bank and its shares of stock should

be exempt from all other taxation whatsoever, so long as said taxation should be paid, during the corporate existence of the bank. On June 25, 1887, within the proper time, at a stockholders' meeting, by a vote of the stockholders, the complainants gave their consent to the levying of said tax, and to the waiver and release of all right under their charter to a different mode and a lower rate of taxation; and this consent was duly certified by the governor of the commonwealth. Since 1887 the complainants have paid this tax under the so-called "Hewitt Act." On November 11, 1892, the legislature of Kentucky, under a constitution adopted in 1891, passed an act dealing with the assessment of certain corporations; among others, banks. The act provided that every incorporated bank should, in addition to other taxes imposed on it by law, annually pay a tax on its franchise to the state, and a local tax thereon to the county, incorporated city, town; or taxing district where its franchise might be exercised. The auditor, treasurer, and secretary of state are by said act constituted a board of valuation and assessment for fixing the value of said franchise. The board is required to apportion the value of the franchise among the several taxing jurisdictions entitled to a share of such tax, and for such apportionment the auditor of state is required, at the expiration of 30 days, to certify to the county clerks of the counties where any portion of the corporate franchise of such banks shall be liable to local taxation the amount thereof liable for county or state taxes; and the county clerk is required to certify the same to the collecting officer of the county and city for collection. If a bank fails to pay its taxes, penalties, and interest after 30 days' notice, it is to be deemed guilty of a misdemeanor, and upon conviction is to be fined $50 for each day during which the tax remains unpaid, to be recovered by indictment or by civil action, of which the Franklin circuit court shall have jurisdiction. The bill avers that the amount of tax which the complainant would have to pay to the board of valuation and assessment over and above what it has to pay under the Hewitt law would be more than $20,000 per annum.

The complainant avers: That the defendants are conclusively estopped by previous litigation to contend in this suit that the complainant has not an irrevocable contract with the state limiting its taxes to those fixed in the Hewitt act. That on February 28, 1894, the complainant filed in the circuit court of Franklin county, that being a court of general jurisdiction, its petition against the county court of Franklin and R. D. Armstrong, sheriff of said county, setting forth the contracts between complainant and the state in regard to taxes under its original charter and under the Hewitt law, claiming that no taxes could be collected from the complainant except under the Hewitt law during its charter life, and, further, that the act of the legislature of November 11, 1892, was unconstitutional and void as impairing the obligation of its contracts aforesaid. That the prayer of the petition was that the court should establish the contracts, and should enjoin Franklin county and Armstrong, its sheriff, from attempting to collect any taxes contrary to said contracts. That a decree was entered upon this petition in the Franklin circuit court, adjudging that the act of November 11, 1892, did not violate any contract between the complainant and the state, and the petition for injunction was denied. That the complainant thereupon appealed from the decree to the court of appeals of Kentucky, which court reversed the judgment of the lower court, and remanded it to the circuit court of Franklin county for judgment in conformity to its opinion. That the circuit court entered the following judgment on January 21, 1896, which is still in full force and effect: "This day came the parties by their attorneys, and this cause having been heretofore submitted for a judgment conforming to the opinion and mandate of the court of appeals heretofore filed, reversing the former judgment of this court, and the court being now sufficiently advised, it is adjudged that article 2 of the act of the general assembly entitled 'An Act to amend the revenue laws of the commonwealth of Kentucky,' approved May 17, 1886 (Gen. St. c. 92, art. 2), and the acceptance of the provision thereof by the plaintiff, constituted a contract between the plaintiff and the commonwealth, which the latter cannot alter or change without the consent of the former, by the terms of which contract the plaintiff cannot, during the continuance of its charter, be assessed for taxation or taxed for state purposes in a different mode

or at a greater rate of taxation than as prescribed in the said act, and can be assessed for taxation and taxed for county and municipal purposes only upon its real estate used by it in conducting its business; that the provisions of the present constitution of this state and the act of November 11, 1892 (Acts 1891–93, c. 103, art. 3), in so far as they were intended to provide for any assessment or taxation of the plaintiff's property, rights of property, or franchise, except to assess and tax for county and municipal purposes its real estate used in conducting its business, are in violation of and repugnant to the federal constitution, and void; that the board of valuation and assessment provided for in said act of November 11, 1892, had and has no authority in law to assess or value the plaintiff's franchise for taxation, or the auditor to apportion or certify the same, or any part of the same, for county or municipal taxation; that the temporary injunction which was granted in this cause at the commencement of the action be, and the same is now, made perpetual, and the defendants Franklin county and R. D. Armstrong, sheriff of said county, be, and each of them are, perpetually enjoined and restrained from levying upon or selling any property of the plaintiff, or in any manner collecting from the plaintiff any taxes for the purposes of Franklin county upon the franchise or property of the plaintiff, except taxes upon its real estate in conducting its business. And it is further adjudged that the plaintiff recover of the defendant its costs in this action expended." That a similar suit was filed in the same court by the complainant against the board of councilmen of the city of Frankfort, to enjoin it from attempting to collect municipal taxes on the apportioned valuation of the franchise certified to the city by the board of valuation and assessment, setting forth exactly the same objection to the validity of the tax. That the court entered a decree for the defendants, and an appeal was taken to the court of appeals, which reversed the decree of the circuit court, and directed that a new decree be entered in conformity with the opinion transmitted. That thereupon the Franklin circuit court entered a judgment enjoining the city of Frankfort in exactly the same terms as that already set forth above in the case against the county court of Franklin. That in February, 1894, the city of Louisville, claiming to act under authority given it by an act of the Kentucky legislature affecting the government of cities of the first class, of which the city of Louisville was the only one, passed an ordinance requiring the banks of the city of Louisville to pay to the city an annual tax of 4 per cent. upon their annual gross earnings. That the complainant failed to pay the tax, and thereupon, under the act referred to, a warrant was sued out in a criminal prosecution against the complainant in the city court of Louisville. That the complainant then, in the manner provided by law, filed its petition in the Jefferson circuit court for a writ of prohibition against R. H. Thompson, judge of the police court of the city of Louisville, setting out in apt terms its incorporation, its original charter, the extensions thereof, the passage of the Hewitt law, the contract entered into in conformity therewith, and claiming the benefit of its said contractual relations with the state. That the petition alleged that the said ordinance of the city of Louisville was void because it impaired the obligation of the complainant's contract, and any authority given to the city of Louisville to pass such ordinance was likewise void for the same reason, and prayed that the judge might be prohibited from taking jurisdiction of the proceeding against the complainant for a violation of the ordinance. That issue was joined on this petition by the defendant, the judge of the police court of the city of Louisville. That the city of Louisville, though not a party in name in that court, was, in reality, the party defendant, and appeared by counsel. That the court found the issues in favor of the complainant, entered a judgment accordingly, and thereupon the defendant the city of Louisville caused an appeal to be taken in its name from the judgment to the court of appeals of Kentucky, in which court the cause was argued by counsel for the city of Louisville and for the commonwealth of Kentucky. That the court of appeals affirmed the judgment of the Jefferson county circuit court, and sent a mandate of affirmance to the court of original jurisdiction, where it was duly entered. That the averment of the petition in that case, upon which issue was joined, and which presented the only point for adjudication, was as follows: "The plaintiff states that the said act granting a charter to cities of

the first class, and 'the said ordinance passed in pursuance thereof, are both unconstitutional and void, in that they impair the obligation of the contract between the plaintiff and the commonwealth of Kentucky, as embodied in its charter as aforesaid, and as embodied in its agreement as aforesaid, made under the revenue law of May 17, 1886, and are a violation of the constitution of the United States, and especially the section thereof providing that no state shall pass any law impairing the obligation of a contract. [Article 1, § 10.] The plaintiff avers and submits that the said act chartering cities of the first class, and the said ordinance as aforesaid, are both unconstitutional and void, as above set forth; that the granting and acceptance of its charter, and the several acts extending and continuing the same, which were accepted and acted upon by said bank, constituted a contract between the state, on the one part, and the bank and its stockholders, on the other part, 'continuing during the legal existence of the corporation, and the state never had, and has not now, the right to repeal or annul said agreement or the rights conferred by said charter, limiting the right of the state to impose a tax on said bank without the consent of said bank. The plaintiff further states that it did give its consent to said act of May 17, 1886, and did, upon the considerations therein recited, waive and release its right under its charter to a different mode or a smaller rate of taxation than is therein provided. Said consent and waiver were made on the belief that the said act was intended to put in operation a permanent legislative policy governing the taxation of all banks then existing which would accept its provisions, to endure at least during the corporate existence of all said assenting banks. The plaintiff submits that such is the true construction of said act, and that said act and its acceptance constituted a contract which the state cannot annul or repeal, and which is binding on the state in all its departments." That the petition was demurred to, the demurrer was overruled, and judgment given for plaintiff, and the police judge was prohibited from proceeding with the criminal prosecution against complainant.

The suits of the Bank of Kentucky against the Franklin county court, against the board of councilmen of the city of Frankfort, and against the judge of the police court of the city of Louisville, were argued and heard at the same time by the court of appeals of Kentucky, and were decided by that court in one opinion, filed June 1, 1895, and reported as the Bank Tax Cases, 97 Ky. 590, 31 S. W. 1013. A majority of the court of appeals held that the complainants here had an irrevocable contract with the state and all its agencies, by virtue of its charter and the extensions thereof, and its due acceptance of the provisions of the Hewitt act, and that the act of 1892 impaired the obligation of that contract, in violation of the constitution of the United States, and was therefore null and void.

The nineteenth clause of the bill in the case at bar is as follows:

The complainant says that the defendants ·Samuel H. Stone, Charles Finley, and George W. Long are threatening, and, unless restrained by this honorable court, will proceed, to value the franchise of the complainant in the manner set forth under the act of November 11, 1892, for the years 1895, 1896, and 1897, and certify such value to the county clerk of Jefferson county, to be by him certified to the collecting officer of the city of Louisville and to the county clerk of Franklin county, to be by him certified to the collecting officer of the board of councilmen of the city of Frankfort and the collecting officer of the county of Franklin; that such assessments will be illegal, in violation of the complainant's contract, as has been heretofore in causes between the complainant and the said several defendants adjudged, and will be unlawful and violative of complainant's contract, and will cast a cloud over complainant's franchise, cause a multiplicity of suits to be brought against complainant, and damage it in a way that cannot be repaired or estimated at the common law; and from these threatened wrongs the complainant has

no remedy at the common law, but its only remedy is by a bill in equity; and, unless restrained by this honorable court, the defendants the city of Louisville, the county of Franklin, and the board of councilmen of the city of Frankfort will attempt to levy and collect taxes based upon the apportionment of the valuation found by said board of valuation and assessment, and will subject the complainant to the embarrassment of many suits, and cast a cloud upon its franchises and property, and an effort will be made to enforce penalties against this complainant, as hereinbefore set out.

It further appears that after the decision in the Bank Tax Cases, 97 Ky. 590, 31 S. W. 1013, the personnel of the court of appeals changed somewhat; and when a new series of bank tax cases, presenting the same question, came to that court, a different conclusion was reached. A majority of the court overruled the prior decision, rendered in 1895, and held that the banks, by accepting the provisions of the Hewitt act, did not acquire any contract rights with the state with reference to the mode or right of taxation, and that the act of November 11, 1892, was valid. Deposit Bank v. Daviess Co., 39 S. W. 1030.

The defendants the Franklin county court and the board of councilmen of the city of Frankfort have filed a general demurrer to the bill. The defendants Stone, Finley, and Long, and the city of Louisville have filed a demurrer—First, to the jurisdiction; and, second, for want of equity. By stipulation of counsel for the complainant, defendants were also permitted to file answers without waiving demurrer. The only averment of the answer that is material is as follows:

"These defendants allege that to grant the injunction prayed for would be, in effect, to enjoin the state of Kentucky, through her officers, from executing the state constitution and the present revenue law of the state, as construed by the court of last resort of the state. These defendants allege that to grant the injunction prayed for would be, in effect and in fact, to enjoin all proceedings in the state courts for collection of the taxes in controversy, contrary to section 720 of the Revised Statutes of the United States. The laws of Kentucky authorize the collection of taxes by suit in the circuit and county courts of the state. There is now pending in the Franklin circuit court, at Frankfort, Ky., a suit by these defendants against complainant and others for mandamus to compel the state board of assessment to value and apportion complainant's franchise, and the auditor to certify the valuation and apportionment thereof to the county clerk of Franklin county, in order to secure collection of the taxes now in controversy herein between these defendants and the complainant."

The cause came on for hearing upon the demurrer to the bill, and upon a motion for a preliminary injunction.

Humphrey & Davie, for complainant.
W. S. Taylor, Atty. Gen., for Samuel H. Stone, Charles Finley, and G. W. Long, the board of valuation and assessment of the state of Kentucky.
Henry L. Stone, for city of Louisville.
James H. Polsgrove, for Franklin county.
Ira & W. H. Julian, for city of Frankfort.

Before HARLAN, Circuit Justice, and TAFT and LURTON, Circuit Judges.

TAFT, Circuit Judge (after stating the facts). The bill attacks the validity of the Kentucky revenue law of November, 1892, and seeks relief against its enforcement on the ground that, in its application to the complainant bank, it violates that clause of the federal constitution which forbids a state to pass a law impairing the obligation of a contract. The case is therefore one arising under the constitution of the United States, and, as it involves more than $2,000, it is within the jurisdiction of this court. Do the facts stated in the bill bring it within the equity jurisdiction of the court? It is well settled that in the federal courts an action in equity will not lie to restrain the collection of a tax on the sole ground that it is illegal and void, and independently of every other consideration. See Rich v. Braxton, 158 U. S. 375, 405, 15 Sup. Ct. 1006. It must appear from the special circumstances averred that there is no adequate remedy at law, and that there is some recognized ground for equity jurisdiction, such as that the enforcement of the tax would lead to a multiplicity of suits or produce irreparable injury. Ogden City v. Armstrong, 168 U. S. 224, 236, 18 Sup. Ct. 98; Express Co. v. Seibert, 142 U. S. 339, 12 Sup. Ct. 250; Allen v. Car Co., 139 U. S. 658, 661, 11 Sup. Ct. 682; Shelton v. Platt, 139 U. S. 591, 11 Sup. Ct. 646; Railway Co. v. Cheyenne, 113 U. S. 516, 525, 5 Sup. Ct. 601; Hannewinkle v. Georgetown, 15 Wall. 547; Dows v. City of Chicago, 11 Wall. 108. What are the remedies at law which the complainant has? If the collecting officers proceed to collect the tax by distraint, the bank may, under the duress of the threatened trespass, pay the taxes alleged to be illegal, and then sue the city of Louisville, the county of Franklin, and the city of Frankfort to recover them back. Railroad Co. v. Commissioners, 98 U. S. 541. It is to be observed, however, that no such action will lie except upon payment under duress. The bank could not simply pay under protest, and sue to recover back. Such a payment would be voluntary. There is no statute of Kentucky providing such a remedy, as there was in Tennessee in the case of Shelton v. Platt. The remedy of paying and suing to recover back in Kentucky exists only when the collecting officer resorts to distraint. But the collecting officers are not obliged to collect the taxes by distraint; they may resort to a simple suit at law for them. In that case the bank may defend on the ground of the invalidity of the law under which the taxes have been assessed. This remedy, except where the taxes are a cloud upon real estate, would ordinarily be adequate; but, under the provisions of the revenue law of November, 1892, we do not think it is. By that law, the bank, on failing to pay the taxes assessed, according to its provisions, within 30 days after notice from the collecting officer, is subjected to a penalty of 10 per cent., and to a fine of $50 a day for every day of the delinquency, to be enforced by indictment or by civil action. It follows that the remedy of defending a suit at law for taxes under this revenue act is attended with the risk of being compelled to pay $50 a day for every day of the time necessarily consumed in the reasonable litigation of the question of the validity of the tax. By bill in equity, the bank may enjoin the assessment,

and pending the litigation, however long the delay, no fines or penalties can accrue against the unsuccessful litigant, because, by the terms of the act, they do not begin to accrue until 30 days after notice to pay has been given by the collecting officer. It is manifest that the remedy at law by defending a tax suit in such cases is attended with a great and oppressive burden of risk, which is absent in an action in equity. The remedy at law is therefore entirely inadequate. Smyth v. Ames, 169 U. S. 466, 518, 18 Sup. Ct. 418; Express Co. v. Seibert, 44 Fed. 315. It is no answer to say that the payment of the tax and the action to recover it back constitute an adequate remedy, because no such action will lie, as already explained, unless there is a distraint, actual or threatened, and the collecting officer, by not distraining, may wholly deprive the taxpayer of this remedy. Indeed, the counsel for the city of Louisville vigorously contends that the collecting officer in that city has no power to distrain for bank taxes. However this may be, it would seem clear that a court of equity will not withhold relief from a suitor merely because he may have an adequate remedy at law if his adversary chooses to give it to him. The remedy at law cannot be adequate if its adequacy depends upon the will of the opposing party. To refuse relief in equity upon the ground that there is a remedy at law, it must appear that the remedy at law is "as practical and efficient to the ends of justice and its prompt administration as the remedy in equity." Boyce v. Grundy, 3 Pet. 210, 215; Sullivan v. Railroad Co., 94 U. S. 806, 811. And the application of the rule depends upon the circumstances of each case. Watson v. Sutherland, 5 Wall. 74, 79.

The practice of the state courts of Kentucky in issuing injunctions against the collection of taxes cannot, of course, be a controlling consideration in determining the limits of the equity jurisdiction in the federal courts in such cases; for it is settled that if a case, "in its essence, be one cognizable in equity, the plaintiff (the required value being in dispute) may invoke the equity powers of the proper circuit court of the United States whenever jurisdiction attaches by reason of diverse citizenship or upon any other ground of federal jurisdiction." Smyth v. Ames, 169 U. S. 466, 516, 18 Sup. Ct. 418. But it is worthy of note that the court of appeals of Kentucky has held that, in the absence of a statute allowing an action to recover back from the state taxes illegally collected, the remedy by injunction is the only adequate one.

In Gates v. Barnett, 79 Ky. 295, 296, the court, in a suit to enjoin a distraint upon certain tobacco for the collection of taxes, said:

"The right to have an injunction to restrain the collection of an illegal tax has been so long recognized and acted upon in this state that it is unnecessary to stop to inquire upon what ground that jurisdiction is exercised by courts of equity. The jurisdiction in this case, however, may be placed upon the ground of the inadequacy of the remedy at law. The officer, acting in good faith and under color of right, is justified by his process, and is not liable as a trespasser: and, as a suit would not lie against the state directly, the only complete remedy is by injunction."

It is by no means clear that distraints or threatened distraints against a bank, in view of the character of its business, may not

involve such serious detriment to its business, and incidentally to the public, as to justify equitable intervention.

In the case of Lenawee Co. Sav. Bank v. City of Adrian, 66 Mich. 273, 276, 33 N. W. 304, 306, a levy upon and seizure of the bank furniture and fixtures was in progress when an injunction was issued. Mr. Justice Campbell, speaking for the court, said:

"No point was made in the pleadings or on the argument against the jurisdiction of equity in this case. As the bank was not liable to taxation at all on its personal property, and the levy was made in such a way as to directly interfere with its business, the case comes within the analogies of the cases represented by Osborn v. Bank, 9 Wheat, 738, from which it cannot be readily distinguished. The court below does not appear to have doubted the jurisdiction, although deciding in favor of defendants on the merits."

In Railway Co. v. Cheyenne, 113 U. S. 516, 525, 5 Sup. Ct. 601, 605, Mr. Justice Bradley said:

"It cannot be denied that bills in equity to restrain the collection of taxes illegally imposed have been frequently sustained. But it is well settled that there ought to be some equitable ground for relief besides the mere illegality of the tax; for it must be presumed that the law furnishes a remedy for illegal taxation. It often happens, however, that the case is such that the person illegally taxed would suffer irremediable damage or be subject to vexatious litigation if he were compelled to resort to his legal remedy alone. For example, if the legal remedy consisted only of an action to recover back the money after it had been collected by distress and sale of the taxpayer's lands, the loss of his freehold by means of a tax sale would be a mischief hard to be remedied."

The interference with the business of a bank and the injury to its credit caused by a distress against its personal property would seem to be a mischief equally hard to be remedied by a mere suit to recover the money back when thus collected.

If it were necessary, we do not think that it would be difficult to sustain the jurisdiction here on the ground that it will prevent a multiplicity of suits. The complainant is seeking to enforce a privilege or exemption which it avers has already been established by the decision of the highest court of the state. To how much more litigation is it to be subjected? Can it not have a remedy in equity against future attempts to invade the privilege already decided to belong to it?

In Osborn v. Bank, 9 Wheat. 738, 842, Chief Justice Marshall said:

"The single act of levying the tax, in the first instance, is the cause of an action at law; but that affords a remedy only for the single act, and is not equal to the remedy in chancery, which prevents its repetition and protects the privilege."

See, also, Morris Canal & Banking Co. v. Mayor, etc., of Jersey City, 12 N. J. Eq. 227; High, Inj. § 530.

In addition to the suits for future taxes, there is also danger of harassing suits for fines and penalties which the law permits to be brought for each day's delay in the payment of the taxes after they have been demanded. We have no doubt that if the complainant shows that the act of November, 1892, violates an exemption secured to it by contract, it may have equitable relief.

The second question in the case is that raised by the averment of former adjudication. The case of City of New Orleans v. Citizens' Bank of Louisana, 167 U. S. 371, 17 Sup. Ct. 905, it is impossible to distinguish from that before us upon the point of res judicata. The Citizens' Bank, in New Orleans, was exempted from taxation by an act of the legislature of Louisiana, of January 30, 1836. Extension of its charter was granted and accepted, and the question was mooted whether the exemption from taxation continued after extension. The bank brought suit in the district court of New Orleans to enjoin the collection of a tax against it, on the ground that it had, by legislative contract, exemption from the same. The district court sustained the claim, and enjoined the collection of the tax. A second suit, brought to enjoin another year's taxes, resulted in a similar judgment. Some years later, the city of New Orleans having attempted to collect a tax for a subsequent year, in violation of the exemption, the bank filed its bill in equity in the circuit court of the United States for the Eastern district of Louisiana, to enjoin the officers of the state and the city from proceeding to collect the tax, and set forth the former adjudication as a conclusive estoppel upon the defendants as to the point of the previous litigation, namely, that there was a contract between the state and the bank forbidding such taxation. The causes of action were not the same in the case brought in the federal court and the cases adjudged in the state courts, because they involved taxes for different years; but the thing adjudged, to wit, the existence and binding effect of the contract for the exemption from the particular taxation, was the same. The supreme court of the United States in this case held that the city of New Orleans and the state taxing authorities were conclusively estopped by the judgments in the state courts from asserting any right to collect the tax in violation of the contract adjudged to exist in the prior litigation, and held that, the contract having been thus established, the bank was entitled to relief from a violation of that contract by any acts of the state officials acting under the authority of state legislation. It had theretofore been doubted in some courts whether a judgment in a suit for taxes could be held to be an estoppel against a state or any agency of the state for the collection of taxes in a suit for taxes subsequently accruing, but the question is now definitely settled. Mr. Justice White, in delivering the judgment of the court, in a most elaborate opinion, said:

"The proposition that, because a suit for a tax of one year is a different demand from the suit for a tax for another, therefore res judicata cannot apply, whilst admitting in form the principle of the thing adjudged, in reality substantially denies and destroys it. The estoppel resulting from the thing adjudged does not depend upon whether there is the same demand in both cases, but exists, even though there be different demands, when the question upon which the recovery of the second demand depends has under identical circumstances and conditions been previously concluded by a judgment between the parties or their privies. This is the elemental rule, stated in the text-books, and enforced by many decisions of this court. * * * It follows, then, that the mere fact that the demand in this case is for a tax for one year, and the demands in the adjudged cases were for taxes for other years, does not prevent the operation of the thing adjudged if, in the prior cases, the

question of exemption was necessarily presented and determined upon identically the same facts upon which the right of exemption is now claimed."

In the case before us there can be no question, from the statement of facts and an examination of the records in previous cases as set forth therein, that the question which was adjudged in them was the identical question presented in the same way and for the same purpose as in the case at bar, to wit, whether there was a contract between the bank and the state which forbade the imposition of higher taxes than those imposed under the Hewitt act. It was distinctly adjudged, in behalf of the complainant against Franklin county and the city of Frankfort, by the court of appeals, by the decision rendered in 1895, and by a mandate issued from that court to the Franklin circuit court, that such a contract in fact existed, and rendered null and void the provisions of the revenue act of November 11, 1892, under which the defendants now seek to impose taxes upon the complainant.

It is vigorously pressed upon us, however, that the judgment in the prohibition suit cannot be relied upon by the complainant bank to establish the existence of a contract of exemption between it and the city of Louisville, because there is nothing in the record to show that the issue made by the demurrer to the petition in that suit was the existence of such an exemption and its violation. Neither the mandate of the court of appeals nor the judgment of the Jefferson court states the ground for holding the ordinance void. It is said that some 30 days before the decision of the prohibition case by the court of appeals that court, in Levi v. City of Louisville, 97 Ky. 394, 30 S. W. 973, held that the city of Louisville had no power under the constitution to substitute a license tax for ad valorem tax on personal property, and that this ruling must have led to overruling the demurrer to the petition in the prohibition suit, because it necessarily rendered the license tax upon the banks void. The Levi Case was a suit by an owner of real estate to enjoin the collection of an ad valorem tax on his land, on the ground that the city had not imposed such a tax on personalty, but had substituted therefor a license tax upon it, and so had discriminated in favor of personal property and against realty. The court of appeals held that it was the duty of the city to impose an ad valorem tax on personalty, and that it could only impose a license tax on a business in addition to an ad valorem tax on property. We confess we cannot see how this decision would have determined the question at issue between the complainant bank and the city of Louisville, in the prohibition suit. There was nothing in the petition for prohibition to show that the license tax was a substitute for an ad valorem tax upon the personal property of the bank. There was nothing to show that the city of Louisville had not, under the revenue act of 1892, assessed an ad valorem tax on the bank's personalty. The license tax was graduated by a percentage, not of the bank's personal property, but of the bank's gross receipts, and did not therefore purport to be a taxation on its personal property. The petition was not therefore demurrable under the Levi Case. When we further consider that the sole ground stated in the petition for a prohibi

tion was that the license tax was void, because it impaired the bank's contract of exemption, and so violated the constitution of the United States, and we find that this was the sole ground considered by the court of appeals in its opinion, we can have no doubt what was the point adjudged.

The case of City of New Orleans v. Citizens' Bank of Louisiana, 167 U. S. 371, 17 Sup. Ct. 905, is relied on to support the contention that a judgment that a license tax violated the bank's contract of exemption cannot be pleaded as res judicata in a case presenting the question whether a franchise tax violates its right of exemption. In the City of New Orleans Case the language of the exemption was: "The capital of said bank shall be exempt from any tax laid by the state, or by any parish or body politic under the authority of the state, during the continuance of its charter." It was held that a judgment holding this to be a valid exemption, and one which rendered void any attempt to tax its capital or real and personal property used in its business, or to tax its shareholders by imposing an obligation on the bank to pay a tax on its stock for them, did not estop the city and the taxing officers from taxing property held by the bank, but not as capital, or from taxing shares of stock in the hands of the shareholders, or from imposing a license tax. This result was reached, as the court points out, because the exemption clause might be entirely valid and inviolable as a contract, so as to exempt capital and business property, and yet, under many decisions of the court, might not prevent the taxation of the shares of stock, and upon the same principle might not prevent a tax or license upon its business. In the case at bar the situation is very different. The provision of the exemption clause in the Hewitt act is that "such bank and its shares of stock shall be exempt from all other taxation whatsoever, so long as said tax shall be paid during the corporate existence of such bank." If this exemption clause is irrevocable, it certainly prevents any additional tax upon the property of the bank. That is clear. The former adjudication was that this exemption was irrevocable, and prevented the imposition of a tax even in the form of a license tax upon its business. If it prevents a license tax, a fortiori does it prevent a direct tax upon its property, tangible and intangible. The tax imposed by the revenue act of 1892 was called a "franchise tax," but it has been held, both by the supreme court of the United States and of the court of appeals of Kentucky, to be in fact nothing but an ad valorem property tax. Henderson Bridge Co. v. Kentucky, 166 U. S. 150, 17 Sup. Ct. 532; Adams Exp. Co. v. Kentucky, 166 U. S. 171, 17 Sup. Ct. 527; Henderson Bridge Co. v. Com., 99 Ky. 623, 31 S. W. 486.

Nor can there be any doubt that the parties to the former adjudications and this litigation are the same. The real parties in interest in this cause among the defendants are Franklin county, the city of Frankfort, and the city of Louisville. It is for them that the board of valuation and assessment are about to apportion the estimated value of the franchise, and to certify it to them for the collection of taxes. The members of the board of valuation are

nothing but their agents created under the law for the purpose of assessing this tax. If the parties in interest in whose favor the tax is to be assessed are bound by the prior litigation, certainly the agencies acting for them under the law are equally bound. In this light the board of valuation and assessment is in respect to the former judgments privy to the city of Louisville and county of Franklin and the city of Frankfort. There is no dispute that the county of Franklin and the city of Frankfort were parties to the respective suits pleaded as former adjudications. The only controversy which is made is whether the city of Louisville was a party to the prohibition suit set forth in the bill. The original litigation was in form a criminal prosecution against the bank for failure to pay a license. That prosecution was in the name of the city of Louisville. The subsequent litigation, however, was in the form of a proceeding in prohibition against the judge of the city court, in which the criminal prosecution had been conducted, on the ground that that court was exceeding its jurisdiction, because proceeding under a void law. To that writ of prohibition the city of Louisville was not formally made a party in the Jefferson circuit court, but the litigation before the Jefferson circuit court was conducted by the city of Louisville. It was the real party in interest. It was against it that the writ of prohibition was really directed, for at its instance and for its benefit the criminal prosecution had been begun. When, therefore, an appeal had been taken from the Jefferson circuit court to the court of appeals, the appellants were the city of Louisville and the judge of the police court. By this means the city of Louisville formally made itself a party to the record, and the mandate which went down was as binding upon it as upon the judge of its court. Had it attempted to proceed with the prosecution, it might have been attached for contempt. Bac. Abr. "Prohibition," M. It is urged that the litigation was really a criminal litigation, and that a judgment in a criminal case cannot be made the basis of a plea of res judicata in a civil action. The original case was criminal in form, but the subsequent litigation by writ of prohibition was civil, and the real parties to it were the defendant in the police court and the city of Louisville, in whose interest the suit was prosecuted in that court. It would have been entirely proper to make the city of Louisville a party defendant to the original writ of prohibition. Indeed, some courts would hold that it was a necessary party. Armstrong v. County Court, 15 W. Va. 190; Walton v. Greenwood, 60 Me. 356. However this may be, the city of Louisville, admitting its interest, did appear as appellant, and so made itself a party to the whole litigation, and was so treated by the court of appeals of Kentucky. As the parties to this litigation are the same as those in the former suits except the board of assessment, which is in privity with the other defendants, and as the point adjudged is exactly the same, we can see no escape from the conclusion that the defendants here are estopped from asserting that the complainant has not a contract exempting it from any other taxation than

that provided in the Hewitt law, and, therefore, that the act of November 11, 1892, is an infringement of that contract, and impairs its obligation in violation of the constitution of the United States.

It is suggested that such a conclusion ousts this court from jurisdiction, because it makes the case turn on a question which does not arise under the laws or constitution of the United States. We cannot assent to this suggestion. The complainant asserts that it has a contract with the commonwealth in respect to taxation, the obligation of which the city of Louisville, the city of Frankfort, and the county of Franklin, by the enforcement of a subsequent law of the state, are seeking to impair. The defendants deny the existence of such a contract, and we must determine whether, as between the parties, such a contract exists. It appears that, as between the complainant and the defendants, it has been conclusively adjudicated that such a contract exists. This relieves the court from re-examining that question as an original one between the present parties; but it does not free the court from the obligation to enforce the constitution of the United States, in favor of the complainant, by enjoining the enforcement of a law which will impair the obligation of a contract thus conclusively established. The case of City of New Orleans v. Citizens' Bank of Louisiana, 167 U. S. 371, 17 Sup. Ct. 527, which presented precisely this aspect, was begun in the circuit court of the United States, and was carried to the supreme court of the United States, and the jurisdiction by the circuit court was not even questioned.

It is argued that the federal courts, in considering the question whether a state law impairs the obligation of a contract, will not accept as conclusive the construction which the supreme court of the state has put upon its constitution or laws in determining the existence of a contract and its violation. This is true, and is settled by a long line of authorities. Shelby Co. v. Union & Planters' Bank, 161 U. S. 149, 16 Sup. Ct. 558; Mobile & O. R. Co. v. Tennessee, 153 U. S. 492, 493, 14 Sup. Ct. 968; Bryan v. Board, 151 U. S. 639, 14 Sup. Ct. 465; Railroad Co. v. Palmes, 109 U. S. 256, 3 Sup. Ct. 193; Douglas v. Kentucky, 168 U. S. 488, 502, 18 Sup. Ct. 199, and cases cited. But the rule has application only where the judgment of the state court is under direct review, or in cases in which the opinion of the state court is cited merely as an authority and a precedent. It has no application to a case in which a prior judgment of the state court between the same parties is pleaded or is offered in evidence in a subsequent suit in a federal court as res judicata binding the parties. The state court is as much bound by the constitution of the United States as a federal court, and is vested with as complete jurisdiction in causes otherwise within its cognizance to decide, between the parties before it, whether a statute of the state impairs the obligation of a contract. Robb v. Connolly, 111 U. S. 624, 637, 4 Sup. Ct. 544. Such decision, embodied in a judgment unreversed, is as binding with respect to the point adjudged as if it had been rendered by the supreme court of the United States. The distinction between the right and duty of the supreme court to decide for itself the question of contract or

no contract without regard to the state decisions, and its obligations to respect the bar of res judicata as between the parties, is quite clearly made in Douglas v. Kentucky, 168 U. S. 488, 503, 18 Sup. Ct. 199, although not expressly commented on. In that case, after maintaining in the strongest terms the obligation of the supreme court to exercise an independent judgment in determining the existence of a contract and its impairment, and after declining to follow a prior decision of the state court upon the subject, the court considered as a distinct matter the question whether the point had not been formerly adjudged in a state court between the same parties, and pointed out with much care that the point of the former adjudication was not the same as that then before the court. The whole discussion would have been wholly unnecessary if, as contended by counsel for defendants, the doctrine of res judicata has no application in the federal courts when the former adjudication is that of a state court upon a question arising under the federal constitution.

One other point remains for consideration. The answer pleads that a mandamus proceeding has been instituted in a state court by the city of Frankfort to compel the board of valuation and assessment to certify the apportioned valuation of the franchises of the complainant; that this mandamus proceeding was begun before the action under consideration, and is pending; and that the preliminary injunction issued by this court will be in effect an injunction against that proceeding in the state court. We do not think so. It is settled that the pendency of a suit in a state court is no bar to a suit upon the same subject-matter in this court. City of North Muskegon v. Clark, 22 U. S. App. 522, 10 C. C. A. 591, and 62 Fed. 694, and cases therein cited. The injunction which we shall grant may be offered as a defense by the board of valuation and assessment in the court where the mandamus proceeding is pending, just as a judgment rendered in one of two pending suits for the same cause of action may be offered by supplemental pleading in the other. The sufficiency of the defense will be for that court. We do not enjoin any suit at all by our order; all we do enjoin is the certification of the taxes. That does not require the defendants to disobey an order of any other court, or restrain their prosecution of a suit therein. The demurrer to the bill must therefore be overruled, and the preliminary injunction prayed for must issue.