## SUNSHINE ANTHRACITE COAL CO. v. ADKINS, Collector of Internal Revenue.

### No. 2949.

District Court, E. D. Arkansas, W. D.
Jan. 8, 1940.

· Adamson, Blair & Adamson, of Terre Haute, Ind., and G. O. Patterson, of Clarksville, Ark., for plaintiff.

Sam Rorex, U. S. Atty., and Leon B. Catlett, Asst. U. S. Attorney, both of Little Rock, Ark., and Robert Sher and Harold Leventhal, Asst. Attys. Gen., for defendant.

Harper & Harper, of Fort Smith, Ark., for District 14 of National Bituminous Coal Commission.

Before WOODROUGH, Circuit Judge, and TRIMBLE and LEMLEY, District Judges.

WOODROUGH, Circuit Judge.

This case has been submitted to the three-judge court on the motion of the plaintiff to strike out those parts of the defendant's answer and supplemental answer which set forth the proceedings of the National Bituminous Coal Commission in which it was determined by the Commission that the underlying coal in certain counties of Arkansas, including the coal

produced by the plaintiff, is bituminous coal within the meaning of the Bituminous Coal Act of April 26, 1937, 15 U.S.C.A. § 828 et seq., and that the plaintiff is not entitled to exemption from the operation and effect of the Act and the subsequent proceedings on the appeal from such determination to this court, reported in Sunshine Anthracite Coal Co. v. National Bituminous Coal Commission, 8 Cir., 105 F.2d 559, and the application for and denial of certiorari by the Supreme Court November 6, 1939. Sunshine Anthracite Coal Co. v. Ickes, 60 S.Ct. 142, 84 L.Ed. —. The plaintiff's petition has been amended so as to include expanded allegations to the effect that the coal produced by it is not bituminous coal within the meaning of Section 17 (b) of the Act, and in support of its motion it presents that it is entitled in this suit to have this court consider its evidence in support of these allegations and render its own judgment upon the issue joined thereon. Its position is that this court is not finally bound by the determination of the Commission or the decision of the Court of Appeals on the review in that court to find as a fact that plaintiff's coal is bituminous coal within the meaning of the Act.

■ This suit is in equity against the Collector of Internal Revenue to enjoin him from collecting from the plaintiff the "tax" of 19½ per cent upon gross sales of its coal production, imposed by Section 3 of the Act against producers of bituminous coal moving in interstate commerce who do not become members of the Code. The suit is independent of the proceedings before the Commission and the appeal in the Circuit Court of Appeals, and it is an appropriate suit to test the validity as to the plaintiff of the imposition upon it of the "tax" of 19½ per cent upon its gross sales of coal. In considering and passing upon the present motion therefor this court will confine itself entirely to the question whether or not the status of the plaintiff as a producer of bituminous coal within the definition of Section 17 of the Act has been finally settled against the plaintiff by the determination and decisions pleaded by defendant.

■ This court's jurisdiction is that of a District Court and it is bound to follow unreversed and unmodified decision by the Circuit Court of Appeals of the circuit. When we turn to that court's opinion in Sunshine Anthracite Coal Company v. National Bituminous Coal Commission, supra, we note the court's conclusion was that Congress had delegated to the Commission the jurisdiction to determine for all administrative purposes of the Act, what coals were and what coals were 'not within the definitions and purview of the Act. The issue of the Commission's jurisdiction was squarely presented by the petitioner for review which is the party plaintiff in this case, and was directly passed on and decided by the court. It was contended [105 F.2d 562] "that the jurisdiction of the National Bituminous Coal Commission in fixing maximum · and minimum prices, rules and regulations, is limited by the Act to coal producers who have accepted the code, and that as petitioner has not become a code member the Commission is given no power to hold a hearing and determine the class or kind of coal produced from petitioner's mines." It argues that "whether or not the coal it produces is bituminous, anthracite, semi-anthracite, lignitic or what not, is of no interest to the Commission until such time as the producer applies for membership in the Code."

In answer to that contention "the Commission has rested its jurisdiction to determine whether petitioner's coal is bituminous within the meaning of the Act upon two separate and distinct bases: (1) Upon the general power of the Commission to make all reasonable rules and regulations for carrying out the provisions of the Act and (2) upon the power to grant exemptions under Section 4-A."

■ The Court of Appeals decided the issue and said: "We think the grounds of jurisdiction relied upon by the Commission are fully sustained." Further on in the opinion, the court said: "Here, where a determination of the character of coals in different parts of the country was a necessary incident to the performance of its other functions, the Commission was authorized to make the necessary determination." This court is bound to follow and apply the law so stated by the Circuit Court of Appeals.

But it is contended for the plaintiff, in support of the present motion, that its petition for review in the Circuit Court of Appeals was in an administrative proceeding in which such fact findings of the administrative body as were based upon substantial evidence were declared by the statute to be conclusive upon the court. The

question whether plaintiff's coals are or are not bituminous is a question of fact and plaintiff asserts a right to the independent judgment of the court as to the fact.

The answer to the contention is that the Bituminous Coal Act, in conferring powers upon the Coal Commission and prescribing the duties to be performed by it, has made the discharge of many of the Commission's duties dependent upon its first making determination of the character of the underlying coals throughout the country and of the resultant status of those who produce the coals and engage in interstate commerce therein. The determination of the character of the coals could have been made by the Congress itself, or it could delegate the power. By the terms of the Act it conferred jurisdiction on the Commission to make the determination and the procedure provided for and followed by the Commission accorded to the plaintiff a full and fair hearing and a review in the Circuit Court of Appeals which satisfied all constitutional requirements as to determination of the fact question of the plaintiff's status in respect to the administration of the Act. The nature of the fact question as it would arise in many different parts of the country practically necessitated delegation of the power to make determination to some such national body as the Coal Commission and precluded committing it to the outcome of individual law suits in many courts.

It has not been decided whether the Collector may constitutionally enforce the collection of the "tax" of 19½ per cent against the plaintiff as provided in Section 3 of the Act, but the decision of the Court of Appeals that the Commission had jurisdiction to determine, and that it had rightly determined the status of the plaintiff as a producer of bituminous coal, necessarily implied that the determination was final and conclusive in the present suit. The decision of the Supreme Court in Shields v. Utah Idaho C. R. Co., 305 U.S. 177, 59 S.Ct. 160, 164, 83 L.Ed. 111, permits of no other conclusion by this court.

In that case, the Utah Central Railroad Company sought to enjoin the United States District Attorney and the United States from enforcing against it certain penal statutes which were not applicable to interurban electric railways. The railroad company claimed to be exempt from the operation of the statutes on the ground that it was an interurban electric railway, but in proceedings had before the Interstate Commerce Commission to which it was a party, the Commission determined that it was not. There had been no court review of the Commission's determination and the railroad company contended that it was entitled to the independent judgment of the court on the fact issue. The Circuit Court of Appeals in the Tenth Circuit, 95 F.2d 911, held that it was so entitled, but on appeal the Supreme Court said:

"What is the scope of the judicial review to which respondent is entitled? As Congress had constitutional authority to enact the requirements of the Railway Labor Act looking to the settlement of industrial disputes between carriers engaged in interstate commerce and their employees, and could include or except interurban carriers as it saw fit, no constitutional question is presented calling for the application of our decisions with respect to a trial de novo so far as the character of the respondent is concerned. With respect to that question, unlike the case presented in United States v. Idaho, 298 U.S. 105, 56 S.Ct. 690, 80 L.Ed. 1070, where the Interstate Commerce Commission was denied the authority to determine the character of the trackage in question (Id. [298 U.S.] page 107, 56 S.Ct. [690], 691 [80 L.Ed. 1070]), the Commission in this instance was expressly directed to make the determination. As this authority was validly conferred upon the Commission, the question on judicial review would be simply whether the Commission had acted within its authority. Interstate Commerce Commission v. Union Pacific R. Co., 222 U.S. 541, 547, 32 S.Ct. 108, 110, 56 L.Ed. 308; Interstate Commerce Commission v. Louisville & Nashville R. Co., 227 U.S. 88, 91, 33 S.Ct. 185, 186, 57 L.Ed. 431; Virginian Railway Co. v. United States, 272 U.S. 658, 663, 47 S.Ct. 222, 224, 71 L.Ed. 463; Tagg Bros. & Moorhead v. United States, 280 U.S. 420, 444, 50 S.Ct. 220, 226, 74 L.Ed. 524; Florida v. United States, 292 U.S. 1, 12, 54 S.Ct. 603, 608 [78 L.Ed. 1077]; St. Joseph Stock Yards Co. v. United States, supra [298 U.S. 38, 56 S.Ct. 720, 80 L.Ed. 1033].

"The condition which Congress imposed was that the Commission should make its determination after hearing. There is no question that the Commission did give a hearing. Respondent appeared and the

evidence which it offered was received and considered. The sole remaining question would be whether the Commission in arriving at its determination departed from the applicable rules of law and whether its finding had a basis in substantial evidence or was arbitrary and capricious." Id.

■ It will be observed that the Supreme Court distinguished, as we must do here, between the fact question of character (or status) of the plaintiff in the suit for injunction which it had brought against the District Attorney, et al., and a question of constitutional right. We recognize fully that the plaintiff here, notwithstanding it is a producer of bituminous coal, has the right to contest payment of the 19½ per cent "tax" of Section 3 of the Act. Whether enforcement of that "tax" will or will not deprive it of constitutional rights remains to be litigated herein. But the Supreme Court has left no room to argue that this court has jurisdiction to try de novo the fact question as to the status of the plaintiff under the Coal Act or the character of the coal it produces.

■ The Supreme Court's decision also precludes our reconsideration in this case of the evidence taken in the prior proceedings. That evidence was fully considered by the Circuit Court of Appeals and it was decided by that court that the Commission "in arriving at its determination had not departed from the applicable rules of law", and that "its findings had a basis in substantial evidence and were not arbitrary or capricious". Such is the full limit of judicial review of the fact findings of an administrative tribunal when made within the scope of its jurisdiction which the Supreme Court recognizes even in the absence of an express statute.

We think the Supreme Court's commitment to such support of administrative determinations of fact questions made within the powers lawfully delegated to them is also clearly shown in the other recent cases. Rochester Telephone Co. v. United States, 307 U.S. 125, 145, 59 S.Ct. 754, 83 L.Ed. 1147; Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 49, 58 S.Ct. 459, 82 L.Ed. 638; Anniston Mfg. Co. v. Davis, 301 U.S. 337, 57 S.Ct. 816, 81 L.Ed. 1143.

The Bituminous Coal Act contains the express provision Section 6(b) (d) that where a petition to review is filed in a Circuit Court of Appeals, the Commission shall file therein a transcript of the record and thereupon "such court shall have exclusive jurisdiction to affirm, modify and enforce or set aside [the order reviewed] in whole or in part." Section 6(d) provides: "(d) The jurisdiction of the Circuit Court of Appeals of the United States or the United States Circuit Court of Appeals for the District of Columbia, as the case may be, to enforce, set aside, or modify orders of the Commission shall be exclusive." And in Section 6(b), Congress provided that where a petition to review is filed in a Circuit Court of Appeals, the Commission shall file therein a transcript of the record, and thereupon "such court shall have exclusive jurisdiction to affirm, modify, and enforce or set aside such order, in whole or in part." The contentions of plaintiff that the fact question has not been settled against it either because its present action is an independent one or because there was a different object in the prior proceedings or because those proceedings were for limited purposes, cannot be sustained.

As to the parties. Another contention of the plaintiff in support of the present motion is that the parties to the present suit are not the same as in the former proceedings in that here the Collector of Internal Revenue is defendant and there the Coal Commission was respondent to the petition for review in the Circuit Court of Appeals.

■ In considering this contention it is observed that the powers conferred upon the Secretary of the Treasury and the Commissioner of Internal Revenue (and subordinately upon the Collector) in respect to the "tax" of Section 3 of the Bituminous Coal Act threatened to be enforced against plaintiff are dependent upon the determination of the plaintiff's status by the Commission and the Court of Appeals. The Commission and the Court are given the exclusive power to make that determination and have exercised the jurisdiction. The "tax", if any is due or enforceable, is due to the United States. To the extent that the Commission has been entrusted with powers affecting the "tax" therefor, it is an agency of the United States, and to the extent that powers have been conferred upon the Collector and his superior officers, they are also agencies of the United States. It results from the paramount and sole interest of the United States that when a valid determination has been made be-

tween a party and an officer or agency of the United States in official capacity, it is conclusive between the party and any other officer of the government authorized as an agency of the government in respect to the same matter. New Orleans v. Citizens' Bank, 167 U.S. 371, 388, 389, 17 S.Ct. 905, 42 L.Ed. 202; Bank of Kentucky v. Stone, C.C.D.Ky., 88 F. 383, 384, 395, affirmed 174 U.S. 799, 19 S.Ct. 881, 43 L.Ed. 1187; Gunter v. Atlantic Coast Line, 200 U.S. 273, 284, 26 S.Ct. 252, 50 L.Ed. 477; Tait v. Western Maryland Ry. Co., 289 U.S. 620, 626, 627, 53 S.Ct. 706, 77 L.Ed. 1405.

In the case of Shields v. Utah Idaho R. Co., supra, from which we have quoted, the situation in regard to the parties was the same as is here presented. There the United States District Attorney was the party defendant who threatened to take action against the plaintiff, as does the Collector in this suit. The injunction that was issued in the lower courts ran against the District Attorney. The fact that the Interstate Commerce Commission intervened in the case did not affect the situation. Although no question as to the identity of the parties to the estoppel of the Commission's determination was discussed by the Supreme Court, this court would not be at liberty to render decision at variance with that announced by the Supreme Court in the completely analogous situation.

We have given careful consideration to the earlier Supreme Court decisions cited and relied upon by plaintiff in support of its motion, including State Corporation Commission of Kansas v. Wichita Gas Co., 290 U.S. 561, 54 S.Ct. 321, 78 L.Ed. 500-504; Baltimore & O. Ry. Co. v. United States, 298 U.S. 349, 56 S.Ct. 797, 80 L.Ed. 1209-1224; United Gas Public Service Co. v. Texas, 303 U.S. 123, 58 S.Ct. 483, 82 L. Ed. 702-711; Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598; South Chicago Coal & Dock Co. v. Bassett, 7 Cir., 104 F.2d 522-525; Ohio Valley Water Co. v. Ben Avon Borough, 253 U.S. 287, 40 S.Ct. 527, 64 L.Ed. 908-914. It may be conceded that different views have been expressed as to the effect to be given in the courts to the determinations of administrative bodies under the varying circumstances presented in the adjudicated cases. No good purpose would be served by attempting a review of them in this opinion. None of those referred to would justify a refusal to follow those late decisions upon which we have relied.

We conclude that the plaintiff's motion to strike out the parts of defendant's and supplemental answer referred to in the motion should be denied and we so order.

Upon the pleadings now presented the finding of the court would be that the plaintiff was a producer of bituminous coal within the meaning of the Act at the times in the petition referred to, and the court would receive no testimony offered to the contrary.

But our ruling on the motion is made with full recognition of the right of the plaintiff to litigate the issues as to the validity or application of the statutory provisions concerning the "tax" or the rights which the plaintiff as a non-code member producer of bituminous coal may have in regard to the same.