## UNION & PLANTERS' BANK OF MEMPHIS v. CITY OF MEMPHIS.

### (Circuit Court of Appeals, Sixth Circuit.   October 21, 1901.)

### No. 924.

**1. JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION.**

A suit to enjoin the collection of taxes levied on the capital stock of a bank, and exceeding $2,000 in amount, on the ground that the revenue statute under which such taxes were levied impairs the obligation of the contract embodied in the bank's charter granted by the state, is one of which a federal court has jurisdiction, because of the constitutional question involved, without regard to the citizenship of the parties.[1]

**2. EQUITY JURISDICTION — PREVENTING MULTIPLICITY OF SUITS — SUITS TO ENJOIN TAXATION.**

A court of equity has jurisdiction of a suit by a bank to enjoin a city from levying taxes upon its capital stock in violation of the terms of its charter, on the ground of the prevention of a multiplicity of suits, where it is alleged that the city has repeatedly levied similar taxes in previous years, resulting in litigation in which the validity of the bank's charter exemption from such taxation has been sustained by the supreme court of the state.

**3. RES JUDICATA—PLEADING.**

To raise the question of res judicata, the judgment relied on must be pleaded and proved.

**4. SAME—MATTERS CONCLUDED—EFFECT TO BE GIVEN TO JUDGMENT OF STATE COURT WHEN PLEADED IN ANOTHER JURISDICTION.**

Under Rev. St. § 905, enacted pursuant to the authority vested in congress by Const. art. 4, § 1, to prescribe the effect to be given to judicial proceedings in other states, and which provides that the judicial proceedings of a state, when properly authenticated, "shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the state from whence the said records are or shall be taken," the effect of a judgment of a state court, when pleaded in a federal court or a court of another state in support of a plea of res judicata, is to be determined by the "law or usage" of the state in which it was rendered.[2]

**5. SAME.**

A bank, in a bill filed in a federal court against a city to restrain the assessment and collection of taxes on its capital stock on the ground that it was exempted from such taxation by its charter, alleged that the matter was res judicata by virtue of a judgment of the supreme court of the state in an action between the same parties involving taxes assessed by the city for previous years, in which complainant's charter had been construed, and its claim to exemption sustained. By the settled rule of decision in the state, such judgment was conclusive only as to the identical taxes involved in the action, and had no conclusive effect upon the right to levy similar taxes in subsequent years. *Held* that, regardless of the rule of the federal courts as to the matters concluded by such judgments, the judgment pleaded could be given only the effect it had by the "law or usage" of the state court, and did not, therefore, sustain the claim of res judicata.

**6. TAXATION—BANK CAPITAL—EXEMPTION IN CHARTER.**

Under the decisions of the supreme court of the United States and of the supreme court of Tennessee, a provision in the charter of a bank granted by the state of Tennessee requiring the bank to pay to the state

---

[1] Jurisdiction of cases involving federal questions, see notes to Bailey v. Mosher, 11 C. C. A. 308; Montana Ore Purchasing Co. v. Boston & M. Consol. Copper & Silver Min. Co., 35 C. C. A. 7.

[2] Conclusiveness of judgments as between federal and state courts, see note to Railroad Co. v. Morgan, 21 C. C. A. 478.

"an annual tax of one-half of one per cent. on each share of stock subscribed, which shall be in lieu of all other taxes," does not exempt the bank from the assessment of ad valorem taxes on its capital, but applies only to the stock in the hands of its shareholders.

Appeal from the Circuit Court of the United States for the Western District of Tennessee.

The case is this: In 1859 the state of Tennessee, by its general assembly, granted a charter under which the Union & Planters' Bank was organized. That charter contained a provision upon the subject of taxation in these words: "That said company shall pay to the state of Tennessee an annual tax of one-half of one per cent. on each share of stock subscribed, which shall be in lieu of all other taxes." The complainant's bill avers that, in impairment of the obligation of this contractual exemption from every tax except that provided by the charter, the state of Tennessee has passed a law providing, among other things, for the assessment of state, county, and city taxes upon the capital stock of this and all other corporations having like contractual exemptions, and that the city of Memphis, under and in pursuance of the legislation referred to, has assessed an ad valorem tax for the year 1899 upon the capital stock of the complainant bank for municipal purposes exceeding $2,000, and is about to distrain, etc. It is averred that the law under which this assessment has been made impairs the obligation of the contract by which complainant is exempt from all taxation upon its capital stock other than that provided for in its charter. It is then averred that in a former litigation between this complainant and the city of Memphis, where it was sought to enforce a municipal assessment of taxes upon complainant's capital stock for the years 1888, 1889, and 1890, it was solemnly adjudged and decided that under the charter provision aforesaid the capital stock of said corporation was exempt from all general taxation. The record in the said suit, and the judgment therein rendered,—being a judgment of the supreme court of Tennessee,—is set out in full, and pleaded and relied upon as an adjudication estopping the said city of Memphis from bringing the validity or the true and proper construction and meaning of said provision again into controversy. The bill is most specific in averring that the judgment so pleaded and set out as establishing the exemption of its said capital stock from taxation was based upon the identical claim of exemption now asserted by it in order to defeat the taxes now in question, and that "the judgment and decree aforesaid adjudged its claim to exemption upon the identical same facts and conditions" as those appearing herein. Upon this former judgment between the same parties, and upon the same facts and issues, the complainant bank avers and contends that the question of the right of the city of Memphis to assess its capital stock "has been finally judicially determined not to exist, because of the judicial construction put upon its exemption in the suit to determine that question between it and the said city of Memphis." The defendant filed a demurrer assigning no less than 12 reasons why the complainant's bill should not be sustained. This demurrer was sustained, and the bill dismissed.

Wm. H. Carroll and T. E. Cooper, for appellant.
John H. Watkins, for appellee.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

LURTON, Circuit Judge, having made the foregoing statement of the case, proceeded then to deliver the opinion of the court.

1. The demurrers which go to the jurisdiction of the court are not well founded. The jurisdiction does not depend upon diversity of citizenship, for that does not exist, but upon the federal question arising out of the alleged violation of the obligation of the contract contained in the charter of the complainant corporation. The bill

attacks the constitutionality of the revenue laws of 1897 and 1899, so far as they authorize the imposition of a tax upon the capital stock of the Union & Planters' Bank, as laws impairing the obligation of the charter exemption. Bank v. Stone (C. C.) 88 Fed. 383, 390; Stone v. Bank, 174 U. S. 409, 412, 19 Sup. Ct. 880, 43 L. Ed. 1027.

2. Neither is the demurrer to the equitable jurisdiction of the court well founded. The remedy by suit at law to recover a tax paid under protest given by the Tennessee act of 1873 (chapter 44; being section 1059 of Shannon's Revision of the Tennessee Code) applies only to revenue due the state. City of Nashville v. Smith, 86 Tenn. 213, 6 S. W. 273. It has no application where the tax complained of is one assessed by a county or city. In such case the only legal remedy to recover an illegal tax is that furnished by the common law. Railroad v. Williams, 101 Tenn. 146, 46 S. W. 448. There must exist some equitable ground for relief besides the mere illegality of the tax. If it appears that the tax constitutes a cloud upon the title of the complainant, or that he will be subjected to irremediable damages or to a multiplicity of suits if compelled to rely upon his legal remedy alone, equity will interpose upon the ground of the inadequacy of the remedy at law. Dows v. City of Chicago, 11 Wall. 108, 20 L. Ed. 65; Railway Co. v. Cheyenne, 113 U. S. 516, 525, 5 Sup. Ct. 601, 28 L. Ed. 1098; City of Ogden City v. Armstrong, 168 U. S. 224, 238, 18 Sup. Ct. 98, 42 L. Ed. 444; Bank v. Stone (C. C.) 88 Fed. 383. The case made by the bill is not the case of an objection to a single or particular assessment. The complainant sets up a claim of complete exemption not only against the particular assessment, but against all future efforts to assess its capital stock. As observed by Chief Justice Marshall in Osborn v. Bank, 9 Wheat. 738, 842, 6 L. Ed. 204, 229:

"The single act of levying the tax, in the first instance, is the cause of an action at law; but that affords a remedy only for the single act, and is not equal to the remedy in chancery, which prevents its repetition and protects the privilege."

The bill, in substance, avers that there have been many previous litigations between the complainant and the state of Tennessee, the county of Shelby, and the city of Memphis, in which the right to levy taxes upon its capital stock was asserted, and the exemption claimed under the charter was denied. Complainant sets out in full one such former litigation with the city of Memphis, resulting in a judgment of the supreme court of the state judicially determining the exemption of its capital stock from any and all taxes other than the charter tax. Notwithstanding these former litigations, the defendant is charged with persisting in a denial of the exemption claimed. Under such circumstances, it would appear that the complainant is entitled to the remedy in chancery for the purpose of preventing repetitions of such assessments in the future, and thereby preventing a multiplicity of suits. Bank v. Stone (C. C.) 88 Fed. 383, 392; Morris Canal & Banking Co. v. Mayor, etc., of Jersey City, 12 N. J. Eq. 227; High, Inj. § 530.

3. Is the capital stock of the complainant company contractually

exempt from taxation, other than the charter tax of one-half of 1 per cent. on each share of stock subscribed? Does this exemption apply to the corporate capital in the hands·of the corporation, or to the shares of capital stock in the hands of shareholders, or are both species of property equally exempt from any tax other than that payable by the. express provision of the charter? Curiously enough, we are not lacking in very high authority upholding each of three possible constructions of·the taxing clause of the complainant's charter. Thus, in City of Memphis v. Farrington, 8 Baxt. 539, the supreme court of Tennessee held that language similar and identical in meaning found in the charters of a number of Tennessee banks and insurance companies operated only to exempt the capital stock of such corporation in the hands of the corporation upon the payment of the charter tax stipulated for, but that shares of stock, being a distinct property, were not exempt, but were subject to taxation in the hands of shareholders. This decision was made in 1876 in a case between a stockholder in the complainant bank, as well as in other corporations, in which Farrington stood for and represented the entire class of stockholders; the city of Memphis and the state of Tennessee being the adversary parties. The complainant corporation was not a party to the suit, and the real question involved was that of the taxability of shares of stock in the hands of shareholders. That case was taken on writ of error to the supreme court of the United States, and there reversed; that court holding, in an opinion by Justice Swayne, that the exemption granted extended to the shares in the hands of shareholders. Three members of the court dissented, holding that the exemption did not extend to shareholders, and that the judgment of the Tennessee court should be affirmed. The judgment of the Tennessee court was accordingly reversed, and the shareholders held to be exempt from any tax other than that stipulated to be paid by the corporation. Farrington v. Tennessee, 95 U. S. 679, 24 L. Ed. 558. In Bank v. McGowan, 6 Lea, 703, the liability·of the Bank of Commerce to be assessed upon its bank building and upon several parcels of realty bought in payment of debt was involved. The court held that the bank building was exempt under a provision of the charter providing that the bank "shall pay to the state an annual tax of one-half of one per cent. on each share of its capital stock, which shall be in lieu of all other taxes," but that this exemption would not extend to the real estate bought in satisfaction of debt due the bank. This result was reached upon the assumption of the exemption of the capital stock of the bank, and upon the authority of the case of De Soto Bank v. City of Memphis, 6 Baxt. 415, 32 Am. Rep. 530, where it was held that the bank's power to hold real estate was limited by the charter to the real estate necessary for the conduct of its business, and the corporate capital used for the purposes of the corporation, and that the contract ceased to operate when taxable property was held for other purposes. In respect of the opinion of the supreme court of the United States in Farrington v. Tennessee, 95 U. S. 679, 24 L. Ed. 558, Judge Cooper, speaking for the court, said:

"There is nothing in conflict with this view, as the learned counsel of the complainant seem to think, in the decision of the supreme court of the United States in Farrington v. Tennessee, 95 U. S. 679, 24 L. Ed. 558. It was there held that the provision in a bank charter like the one before us is a contract, and will protect the shares of the stockholders from additional taxation. We recognize the controlling authority of that court in such cases, and yield to its decisions. The provision in question will therefore protect the capital stock and the shares of the stockholders from any taxation beyond that prescribed in the charter."

That case was affirmed upon a writ of error sued out by the bank, the case being reported as Bank of Commerce v. Tennessee, 104 U. S. 493, 26 L. Ed. 810. Both of these decisions were made in 1881.

The next opinion in point of time proper to be referred to is that of the city of Memphis against the Union & Planters' Bank, the appellant herein, in which the city sought by a bill in equity to compel the payment of city taxes for the years 1887 to 1891, inclusive, assessed upon the corporate capital of the bank. The bill also sought to compel the payment of a privilege tax for the years 1889, 1890, and 1891 imposed by the city for the right of exercising its franchises of doing a banking business in the city. The bill averred that the bank claimed an exemption from all taxation upon its capital stock, as distinguished from the shares in the hands of stockholders, by virtue of the charter contract heretofore set out, and claimed that it was not subject to the ad valorem or privilege tax which had been imposed, and therefore refused to pay. The contention of the city, as set out on the face of its bill, was that the true and proper interpretation of the charter exemption referred to was to exempt the shares in the hands of shareholders from any tax other than that which the bank was required to pay under its charter, and that the corporation, as such, was liable to pay taxes upon its capital stock and upon its franchises notwithstanding the terms of the charter. The court sustained the demurrer of the defendant bank and dismissed the bill, holding that the bank was exempt from both species of tax by reason of its charter exemption. Touching the former decisions of the court construing and applying the charter exemption involved, Judge Caldwell, speaking for the court, said:

"Since the decision in the Farrington Case by the supreme court of the United States, this court has uniformly adhered to its previous holding that no ad valorem tax can lawfully be laid on the capital stock, and, in recognition of that decision, has gone further, and said that shares of stock are likewise exempt from other taxation than that prescribed in the charter." Bank v. McGowan, 6 Lea, 705; State v. Butler, 13 Lea, 406; Id., 86 Tenn. 633, 8 S. W. 586.

Continuing, the learned judge said:

"Considering the decisions of the supreme court of the United States in Farrington v. Tennessee, 95 U. S. 679, 24 L. Ed. 558, and in Bank of Commerce v. Tennessee, 104 U. S. 493, 26 L. Ed. 810, together, and giving them the controlling weight to which they are entitled, it cannot be held otherwise than that the charter tax of one-half of one per cent. is in lieu of all other taxes, whether against the bank on its capital stock or against owners on shares of stock. Under the construction there given, the charter exemption includes both. As an original question, we would hold as held by this court in City of Memphis v. Farrington, 8 Baxt. 539, and charge the stockholders with an ad valorem tax; but, upon authority, we hold as stated above. This

court has never decided, and in the absence of the ruling of the supreme court of the United States in Farrington v. Tennessee, 95 U. S. 679, 24 L. Ed. 558, would not now decide, that the charter gives the owners of shares of stock any immunity or exemption from taxation on the shares. That question is now adjudged alone upon the authority of that case. It did not arise and was not adjudged in Bank v. McGowan, 6 Lea, 705, in State v. Butler, 13 Lea, 406, or in Id., 86 Tenn. 633, 8 S. W. 586. Complainant seeks, in addition to what has already been stated, to recover from the bank $1,800 as privilege taxes for the years 1889, 1890, and 1891. These taxes are claimed from the corporation for the right of exercising its franchises,—for the privilege of doing a banking business. Manifestly, the charter tax was intended to cover this right or privilege. The language of the charter implies that in consideration of the public good, and the payment of the tax therein specified, the state will allow the corporation to exercise the franchises granted without further taxation. City of Memphis v. Hernando Ins. Co., 6 Baxt. 527; Union Bank of Tennessee v. State, 9 Yerg. 490. The case of New Orleans C. & L. R. Co. v. City of New Orleans, 143 U. S. 192, 12 Sup. Ct. 406, 36 L. Ed. 121, is not, as we understand it, an authority against this ruling. There the contract afforded 'no evidence of an intention' to exempt the corporation from license or privilege tax. 143 U. S. 195, 12 Sup. Ct. 406, 36 L. Ed. 122. Here the intention to do so is clear and unmistakable. The charter tax was imposed primarily as a consideration for the corporate franchises and the right to exercise them. No other reasonable construction can be placed upon the words of the charter. The state is bound by its contract; and so, likewise, is the city of Memphis, which is but an arm or agency of the state government. This is true not only as to privilege taxes, but also with respect to the other taxes claimed in this case. All subjects of taxation covered by the charter tax are exempt from further assessment, whether made in behalf of the state, county, or municipality. As to those subjects, the specified tax is in lieu of all the other taxes,—state, county, and municipal. Such is the undoubted meaning of the contract. City of Memphis v. Hernando Ins. Co., 6 Baxt. 527; Union Bank of Tennessee v. State, 9 Yerg. 490; City of Nashville v. Thomas, 5 Cold. 600."

The effect of the judgment in the case last cited as an estoppel and bar to the assessment of taxes upon the capital stock of the appellant bank by the city of Memphis is the principal question in the case now before us. For the present, however, we will continue the history of the litigations which involve the extent of the exemption.

The next decision in point is that of Shelby Co. v. Union & Planters' Bank, 161 U. S. 149, 16 Sup. Ct. 558, 40 L. Ed. 650. In that case the charter exemption here involved was construed as not including capital stock or surplus and accumulated profit, and as exempting only the shares of stock in hands of the shareholders. The Farrington Case, 95 U. S. 679, 24 L. Ed. 558, is there construed as not inconsistent with the conclusion stated. After the decision last cited the city of Memphis again sought to tax the capital stock of the complainant bank, and assessed same for the years 1896 and 1897. The bank filed its bill in a chancery court of the state to enjoin the city from enforcing the collection of said tax, and set out in its said bill two distinct grounds upon which it resisted the enforcement of said assessment: (1) That its capital stock was exempt under the charter provision already mentioned, and that such exemption had been duly adjudged in previous litigations which had the force of res adjudicata; (2) that the revenue law of the state provided that "no tax shall hereafter be assessed upon the capital stock of any bank, banking association or loan, or trust, insurance

or investment companies, but the shareholders in such bank or other association shall be assessed and taxed upon the market value of their shares of stock herein." Laws 1895, c. 120, § 10. The city answered, asserting its power to make said assessments, and denied the exemption of the complainant's capital stock under its charter, and denied the force of the former decision as res adjudicata. After answering, the city filed a cross bill for the purpose not only of enforcing the payment of the ad valorem tax so assessed against the capital stock of said bank, but also for the purpose of compelling payment of certain privilege taxes due the city for the same year. Upon the pleadings and proofs the chancellor held the bank not liable for either tax, and perpetually enjoined the city from enforcing payment, and dismissed the cross bill. From this decree the city appealed to the supreme court of the state of Tennessee, which reversed the decree of the court below, holding that the capital stock was not exempt, but that the particular assessments complained of were invalid, because the revenue law of the state did not provide for the assessment of the capital stock of any bank. It further held that the privilege tax was authorized under the existing law. and the bank liable therefor. In respect to the force and effect of the former decision of the same court adjudging the capital stock not liable to any general taxation as res adjudicata, the court held: (1) That the effect of the decision in favor of the exemption of such capital stock from general taxation was nullified by the later decision of the supreme court of the United States in the case of Shelby Co. v. Union & Planters' Bank, 161 U. S. 149, 16 Sup. Ct. 558, 40 L. Ed. 650, holding that the charter exemption had no application to corporate capital stock; (2) that its former judgment involved a different cause of action, to wit, the taxes assessed for years prior to the assessment then complained of, and that "the plea of res adjudicata is to be limited to the taxes actually in litigation, and is not conclusive in respect of taxes assessed for other and subsequent years."

It is plain from this history of the litigation involving the scope of the charter exemption claimed, and of like exemptions in other charters, that, as a mere question of authority, the exemption claimed in favor of appellant's capital stock does not exist, and that this court, in the interpretation of the charter exemption, should accept as authoritative the opinion of the supreme court of the United States in Shelby Co. v. Union & Planters' Bank, 161 U. S. 149, 16 Sup. Ct. 558, 40 L. Ed. 650. But the duty of interpreting the scope and meaning of the exemption clause may be regarded as eliminated if it be true, as claimed, that the exemption exists as claimed because it has been so determined by the judgment relied upon as res adjudicata. On this point, in City of New Orleans v. Citizens' Bank of Louisiana, 167 U. S. 371, 387, 17 Sup. Ct. 905, 911, 42 L. Ed. 202, 207, Mr. Justice White, speaking for the court, in a case where a charter exemption was claimed from general taxation by force of certain former judgments, said:

"Of course, if the judgments are the things adjudged and conclusively determined as between parties that the exemption of the bank under its char-

ter exists, to the extent determined by the judgments, the duty in that regard of discussing the charter itself will be eliminated, since the effect of the thing adjudged will be to settle that question."

Passing, then, the interpretation of the scope of the charter exemption as an original question, and as affected by the decisions heretofore made, considered as mere authorities, we come to the examination of the effect of the judgment of the supreme court of Tennessee pronounced, in a suit wherein the present complainant and appellant, the Union & Planters' Bank, and the city of Memphis, the present defendant and appellee, were adversary parties, and in which it was adjudged and determined that the charter tax of one-half of 1 per cent. was in lieu of all other taxes against the capital stock of said bank, as well as against the stockholders upon their shares òf stock, and that the capital stock of said bank was not liable to the assessment which had been made, nor for the license or privilege tax asserted against it. That the suit in which said judgment was rendered was in the name of the state for the use of the city of Memphis is of no moment. The city was the real party, and is as much concluded as if the suit had been prosecuted directly by it. City of New Orleans v. Citizens' Bank of Louisiana, 167 U. S. 371, 388, 17 Sup. Ct. 905, 42 L. Ed. 202; Scotland Co. v. Hill, 112 U. S. 183, 5 Sup. Ct. 93, 28 L. Ed. 692.

We come then to the question of the efficacy of the judgment in the prior case as adjudging conclusively that an exemption exists which extends to the capital stock of the complainant bank. The city taxes involved in the prior case were those assessed upon complainant's capital stock by the city of Memphis for the years 1888 to 1891, inclusive. The taxes involved in the present case are taxes assessed by the same municipality and upon the same capital stock for the year 1899. The cause of action in the two cases is therefore not the same, inasmuch as the demand in the adjudged case was taxes of certain years, other than the years involved in this suit. But the question of exemption of the capital stock from taxation other than that stipulated in the charter was necessarily presented and determined adversely to the claim of the city of Memphis upon identically the same facts upon which the right of exemption is now claimed. Under the decisions of the supreme court of the United States, the mere fact that the present demand is for a tax for one year, and the demand in the adjudged case was for taxes for other and antecedent years, "does not prevent the operation of the thing adjudged." City of New Orleans v. Citizens' Bank of Louisiana, 167 U. S. 371, 396, 398, 17 Sup. Ct. 905, 42 L. Ed. 202; Southern Pac. R. Co. v. U. S., 168 U. S. 1, 52, 18 Sup. Ct. 18, 42 L. Ed. 355.

In City of New Orleans v. Citizens' Bank of Louisiana, the court said:

"The estoppel resulting from the thing adjudged does not depend upon whether there is the same demand in both cases, but exists, even although there be different demands, when the question upon which the recovery of the second demand depends has, under identical circumstances and conditions, been previously concluded by a judgment between the parties or their privies."

"This," said the court, "is the elemental rule, stated in the text-books, and enforced by many decisions of this court." Among the cases cited as supporting this principle are the cases of Bank v. Beverly, 1 How. 134, 139, 11 L. Ed. 75; Cromwell v. Sac Co., 94 U. S. 351, 353, 24 L. Ed. 195; and Last Chance Min. Co. v. Tyler Min. Co., 157 U. S. 683, 15 Sup. Ct. 733, 39 L. Ed. 859; and the case of Heroman v. Louisiana Institute, 34 La. Ann. 805, 814. This well-settled rule was applied in a case in which the controversy was as to the efficacy of prior judgments upon demands for taxes for years other than those involved in that case, which judgments had been rendered in local courts of the state of Louisiana. In that case it was also contended that public policy forbade the application of the principle stated to controversies as to taxation. After saying that this argument, if meritorious, should be addressed to the lawmaking, and not to the judicial, department, Mr. Justice White said that it was "without real merit."

"In its ultimate aspect it asserts that no question concerning government or public authority ought ever to be submitted to judicial investigation. Indeed, the contention is that there is no power in courts of justice to consider any question of taxation, or render any judgment in relation thereto. That this is the result of the proposition is manifest from the fact that the very essence of judicial power is that, when a matter is once ascertained and determined, it is forever concluded when it arises again, under the same circumstances and conditions, between parties or their privies. To admit the judicial power, on the one hand, and to deny, on the other, the very substance and essence of such power, is not only contradictory, but destructive of the fundamental conceptions upon which our system of government is based. Under this theory the cause under consideration should not be entertained, but should be dismissed. Accepting the argument in its full consequence, every judgment rendered by this court, from the foundation of the government, declaring a particular tax or burden unconstitutional, imparts no efficacy whatever. Every decree of this court enforcing taxation in order to discharge obligations previously contracted, where the right to the tax was a part of the obligation, is deprived of the sanctity of the thing adjudged, for, manifestly, if the estoppel of the thing adjudged does not arise from a judgment preventing taxation, such an estoppel cannot also result from a judgment enforcing taxation."

But the defendant says that, whatever the efficacy of such a judgment ordinarily, the judgment pleaded in bar, and as a conclusive adjudication of the question of exemption here involved, is a judgment of the supreme court of Tennessee, and that under the well-settled rule of that court a judgment in a tax case is not conclusive between the parties except as to the particular taxes actually in litigation, and is not conclusive in respect of taxes assessed for other and subsequent years, when relied upon as res adjudicata. State v. Bank of Commerce, 95 Tenn. 231, 31 S. W. 993; Union & Planters' Bank v. City of Memphis, 101 Tenn. 154, 167, 46 S. W. 557. The opinion of the court in that case was by Judge McAllister, who, upon this subject, said:

"We think the plea of res adjudicata in tax cases is to be limited to the taxes actually in litigation, and is not conclusive in respect of taxes assessed for other and subsequent years. Since this is not a federal question, we decline to follow the ruling in City of New Orleans v. Citizens' Bank of Louisiana, 167 U. S. 371, 17 Sup. Ct. 905, 42 L. Ed. 202, in which it was held by a majority opinion that a judgment in a tax case is as conclusive of the taxes

of other years as it is of the taxes for the years actually involved. In State v. Bank of Commerce, 95 Tenn. 231, 31 S. W. 993, we said, "These suits being for other years than those sued for in the Farrington Case, that decision is not, as an adjudication, conclusive of the present case;' citing Cromwell v. Sac Co., 94 U. S. 351, 24 L. Ed. 195; Nesbit v. Independent Dist., 144 U. S. 610, 12 Sup. Ct. 746, 36 L. Ed. 562; Railroad Co. v. Alsbrook, 146 U. S. 279, 13 Sup. Ct. 72, 36 L. Ed. 972; Keokuk & W. R. Co. v. Missouri, 152 U. S. 301, 14 Sup. Ct. 592, 38 L. Ed. 450. We adhere to that ruling."

The effect of the judgment in Union & Planters' Bank v. City of Memphis as res adjudicata, in avoiding the efficacy of the prior judgment now relied upon as res adjudicata, is not now before us, inasmuch as that judgment has not been pleaded or proven; the present hearing being upon a demurrer to the bill of complainant, which does not set out the judgment in the case referred to. Turley v. Turley, 85 Tenn. 252, 261, 1 S. W. 891; Jourolmon v. Massengill, 86 Tenn. 81, 5 S. W. 719; Daniell, Eq. Pl. 659, 661; U. S. v. Bliss, 172 U. S. 321, 19 Sup. Ct. 216, 43 L. Ed. 463; Bryar v. Campbell, 177 U. S. 649, 20 Sup. Ct. 794, 44 L. Ed. 926; Freem. Judgm. §§ 283, 332.

The case comes to this: The complainant pleads a judgment as conclusively establishing that a charter exemption exists, giving it immunity from the tax here involved, which judgment has no force or effect in the court which rendered it, other than as a bar to another suit for the same identical taxes then in litigation, and which, under the law and usage of that state, "is not conclusive in respect of taxes assessed for other and subsequent years." The exemption from the ad valorem taxation of its capital stock claimed in this suit exists only, if it exists at all, by reason of the conclusive character of the thing adjudged in the prior case. But, if that judgment would not be conclusive in respect to taxes for other years in the courts of the jurisdiction in which it was pronounced, upon what principle does it become of any greater efficacy when relied upon as res adjudicata in the courts of another jurisdiction? By the law of England as it existed when the separation from our mother country occurred, foreign judgments were only prima facie evidence upon the merits of the matter in litigation, and, when relied upon in the courts of England, were subject to re-examination not only as to the jurisdiction of the court, but upon the merits. By the law of this country, a money judgment, rendered by a court of a foreign country having jurisdiction of the parties and the cause, in a suit brought by one of its citizens against one of ours, is only prima facie evidence, and not conclusive, in an action brought here upon the judgment, when by the law of the foreign country judgments of American courts are not recognized as conclusive. Hilton v. Guyot, 159 U. S. 113, 16 Sup. Ct. 139, 40 L. Ed. 95. But such a judgment is conclusive, when sued upon here, as to all matters therein pleaded, and which might have been tried in the foreign court, if it be the judgment of a foreign jurisdiction which under like circumstances regards the judgments of our courts as conclusive. Ritchie v. McMullen, 159 U. S. 235, 16 Sup. Ct. 171, 40 L. Ed. 133. "Before the American Revolution," says Mr. Justice Gray in the great opinion delivered by him for the court in Hilton v. Guyot,

159 U. S. 113, 181, 16 Sup. Ct. 139, 150, 40 L. Ed. 95, 114, "all the courts of the several colonies and states were deemed foreign to each other, and consequently judgments rendered by any one of them were considered as foreign judgments, and their merits re-examinable in another colony, not only as to the jurisdiction of the court which pronounced them, but also as to the merits of the controversy, to the extent to which they were understood to be re-examinable in England." "It was because of that condition of the law, as between the American colonies and states, that the United States at the very beginning of their existence as a nation ordained that full faith and credit should be given to the judgments of one of the states of the Union in the courts of another of those states." By section 1 of article 4 of the constitution of the United States it is accordingly provided that "full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state; and the congress may, by general laws, prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof." Under this power the congress did at an early day provide not only for the mode of authenticating the records and proceedings of the courts of any state, but enacted "that the said records and judicial proceedings, authenticated as aforesaid, shall have such faith and credit given to them in every court within the United States, as they have by law or usage in the courts of the state from whence the said records are or shall be taken." Rev. St. § 905. Judgments rendered in one state of the Union, when proved in the courts of another, differ from judgments recovered in a foreign country only in respect to their conclusiveness upon the merits if rendered by a court having jurisdiction over the parties and the cause of action, and this difference is wholly due to the constitutional and legislative provision already cited. Mills v. Duryee, 7 Cranch, 481, 484, 485, 3 L. Ed. 411; D'Arcy v. Ketchum, 11 How. 165, 175, 176, 13 L. Ed. 648; Hanley v. Donoghue, 116 U. S. 1, 4, 6 Sup. Ct. 242, 29 L. Ed. 535.

In Wisconsin v. Pelican Ins. Co., 127 U. S. 265, 292, 8 Sup. Ct. 1370, 1375, 32 L. Ed. 239, 244, it was said:

"Judgments recovered in one state of the Union, when proved in the courts of another government, whether state or national, within the United States differ from judgments recovered in a foreign country in no other respect than in not being re-examinable on their merits, nor impeachable for fraud in obtaining them, if rendered by a court having jurisdiction of the cause and of the parties."

In Hilton v. Guyot, 159 U. S. 113, 182, 16 Sup. Ct. 139, 150, 40 L. Ed. 95, 115, it was said that "the decisions of this court have clearly recognized that judgments of a foreign state are prima facie evidence only, and that, but for these constitutional and legislative provisions, judgments of a state of the Union, when sued upon in another state, would have no greater effect."

The statutory provision (section 905) extends to every court "within the United States," and therefore to courts of the United States, and such courts are therefore bound to give to judgments of state courts the same faith and credit which the courts of another

state are bound to accord to them.   Railroad Co. v. Morgan, 21 C. C. A. 468, 76 Fed. 429; Pennoyer v. Neff, 95 U. S. 714, 733, 24 L. Ed. 565; Freem. Judgm. § 575.   Neither the constitutional nor legislative provision referred to requires that any such judgment, when proven in a court of the United States or of another state, shall be given any greater efficacy or degree of conclusiveness than it has by the "law or usage" of the state from which it comes.   The plain provision of the statute is that such judgments "shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the state from whence the said records are or shall be taken."   Nor does any principle of general law or natural justice demand that any greater efficacy shall be accorded to a judgment of any state or foreign country, when either sued upon or pleaded as res adjudicata in the courts of another jurisdiction, than is accorded to it by the law or usage of the state or country from which the judgment comes.   If such judgment be given the effect and conclusiveness accorded to it at home, every demand of the positive law as well as of justice has been answered.   To give it any greater efficacy than it has in the state or country in which it was rendered would be in opposition to every principle of international law, and contrary to principles of moral justice.   Those defenses which might be made to it at home, and those only, can be made in any other jurisdiction where it is sued upon or pleaded in bar.   These principles find support in the utterances of a multitude of judges, though in none of the cases cited does the precise question here at issue seem to have arisen.   Chicago & A. R. Co. v. Wiggins Ferry Co., 108 U. S. 18, 20, 1 Sup. Ct. 614, 27 L. Ed. 636; Chase v. Curtis, 113 U. S. 452, 460, 5 Sup. Ct. 554, 28 L. Ed. 1038; Suydam v. Barber, 18 N. Y. 468, 472, 75 Am. Dec. 254; Renaud v. Abbott, 116 U. S. 277, 287, 6 Sup. Ct. 1194, 29 L. Ed. 629; Hanley v. Donoghue, 116 U. S. 1, 6 Sup. Ct. 242, 29 L. Ed. 535; Candee v. Clark, 2 Mich. 257; Armstrong v. Carson, 2 Dall. 302, 1 L. Ed. 391; Miles v. Caldwell, 2 Wall. 35, 17 L. Ed. 755; Green v. Sarmiento, 3 Wash. C. C. 17, Fed. Cas. No. 5,760; King v. Asylum, 12 C. C. A. 145, 164, 165, 64 Fed. 331; Wood v. Watkinson, 17 Conn. 500, 504, 505, 44 Am. Dec. 562; Baugh v. Baugh, 4 Bibb, 556; Sweet v. Brackley, 53 Me. 346; Melan v. Duke de Fitzjames, 1 Bos. & P. 138; Smith v. Nicolls, 5 Bing. N. C. 208; Embry v. Palmer, 107 U. S. 3, 10, 2 Sup. Ct. 25, 27 L. Ed. 346; Poorman v. Crane's Adm'r, Wright, 347; Freem. Judgm. § 575; Wells, Res. Adj. § 531; Bates, Fed. Eq. Prac. § 424.

In Chicago & A. R. Co. v. Wiggins Ferry Co., cited above, speaking of the effect to be attached to the judgment of the state of Missouri construing a law of another state, the court said:

"So long as the judgment stands, it cannot be impeached collaterally in the courts of the United States, any more than in those of the state, by showing that if due effect had been given to the laws it would have been the other way.   If it has the effect of an estoppel, as is claimed, it will continue to have that effect until reversed or set aside in some appropriate form of proceeding instituted directly for that purpose.   The courts of the United States must give it the same effect as a judgment that it has in the courts

of the state. Whether, as a judgment, it operates as an estoppel, does not depend on the constitution or laws of the United States, but on the effect of a judgment under the laws of Missouri."

In Suydam v. Barber, 18 N. Y. 468, 472, 75 Am. Dec. 254, the suit was against the members of a firm upon a partnership obligation. One of the partners defended upon the ground that the plaintiffs had brought an action against another of the partners alone in a court of Missouri, and recovered judgment. This Missouri judgment was pleaded as operating as an extinguishment of the liability of the other partners. According to the common law, which prevailed in New York, a judgment against one of several joint debtors, obtained in an action against him alone, was a bar to an action against the others. But it was shown that all contracts which by the common law were joint only, were by the law of Missouri joint and several, and that the effect of a judgment against one thus jointly and severally liable was not to extinguish the obligation or discharge the liability of others. The New York court held the judgment inoperative as a bar, and, among other things, said:

"The consequences of a judgment, in respect to its effect as a merger or extinguishment of the original demand, are a part of the law under which the judgment itself is rendered, just as much as are those other common consequences of judgments,—that a party may have execution upon them, and that they are not re-examinable on the merits of the controversy determined by them. In all these particulars the effect of a judgment, in the government where it is rendered, is the subject of positive regulation by that government, just as it is the subject of positive regulation by what process and what courts judgments shall be rendered at all."

Referring to the effect of judgments of one state when pleaded in another under the constitutional and legislative provisions in respect to the faith and credit to be given to such judgments by the courts of the United States and of other states, the court said:

"While the rule just stated as to the effect of judgments of one state in the courts of another is clear, as is established by the cases cited by Judge Cowen, and by numerous others, yet no case can be found where a greater effect is given to the judgment of any state in the courts of another than belongs to it in the state where it was rendered. Indeed, such a rule would be against all reason, and not only out of the policy of the provisions of the constitution and laws of the United States on that subject, but against and irreconcilable with all policy and with the plainest and fundamental principles of justice."

Finding that under the law of Missouri the effect of the judgment was not to extinguish the obligation sued upon or discharge the other persons liable, it was held that no greater effect should be given to such a judgment when relied upon as a bar to a suit against the other parties liable upon the original contract.

In Wood v. Watkinson, cited above, the Connecticut court said:

"Taking it for granted that, when a judgment in the court of a sovereign state or one of the states of this Union is sought to be enforced in another state than that in which it was rendered, there is no objection to its validity on the ground of a want of jurisdiction in that court, it is well settled that no greater effect is to be given to it than it would have in the state where it was rendered. It has no higher dignity in any other state than in the one where it was pronounced; and, hence, if in the courts of the state where the judgment was rendered it is inconclusive, or if it is inquirable into there

during a particular period or on certain conditions, it will be open to investigation, to the same extent, everywhere else. Armstrong v. Carson's Ex'rs, 2 Dall. 302, 1 L. Ed. 391; Green v. Sarmiento, Pet. C. C. 74, Fed. Cas. No. 5,760; Spencer v. Sloo, 8 La. 290; Curtis v. Gibbs, 2 N. J. Law, 399; Baugh v. Baugh, 4 Bibb, 556; Rogers v. Coleman, Hardin, 413, 420, 3 Am. Dec. 733; Smith v. Nicolls, 5 Bing. N. C. 208, 35 E. C. L. 88. So, if a judgment operates in the state where it was rendered only in rem, it will not elsewhere be enforced in personam. It results conclusively from this principle, or is rather involved in it, that if a judgment, in a state where it is recovered, has not the effect of binding personally the defendants, or any of them, in the suit in which it was rendered, no greater effect will be given to it in any other state where it is endeavored to be enforced. It derives its obligation only from the laws of the state in which it is pronounced. A judgment creates a debt, on the ground that a liability is ascertained and established by the decision of a tribunal which might rightfully adjudicate upon it, and such adjudication derives its whole force and effect from the laws of the state under whose authority it is made. * * *"

That court added:

"There is nothing in our national constitution on this subject which, according to any construction which has ever been claimed for it, gives the judgment of one of the states, when sought to be enforced in another, a greater effect than it would have in the state where it was rendered."

There is nothing which precludes this court from determining for itself whether the charter exemption claimed exists to the extent of granting to the appellant immunity from the ad valorem taxes assessed against its capital stock by the defendant, the city of Memphis, except the supposed conclusive effect of the thing adjudged in the prior case, which is relied upon as settling the question, without looking into the terms of the contractual exemption. Finding, as we do, that the judgment in the prior case is not, under the law of Tennessee, conclusive when the second suit is a demand for taxes of other years, subsequently assessed, and that in the courts of that state neither party could plead that judgment as a bar to a suit for taxes for other years, we are, therefore, not precluded from looking into the charter. The opinion of the supreme court of the United States in the two cases of Bank of Commerce v. Tennessee, 161 U. S. 134, 16 Sup. Ct. 456, 40 L. Ed. 645, and Shelby Co. v. Union & Planters' Bank, 161 U. S. 149, 16 Sup. Ct. 558, 40 L. Ed. 650, are binding authorities upon us, and require that we shall hold that the capital stock of the appellant bank is not exempt from ad valorem taxation by reason of the charter exemption claimed by the Union & Planters' Bank.

The demurrers which raise the question we have discussed were properly sustained, and the decree dismissing the bill is accordingly affirmed.