### UNIVERSITY OF THE SOUTH v. JETTON et al.

(Circuit Court, M. D. Tennessee. August 14, 1907.)

### No. 3,481.

1. COURTS—JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION.

A federal court has jurisdiction of a suit by a landowner to restrain revenue officers of a state from prosecuting proceedings expressly based on a state statute to enforce the collection of taxes against such lands, on the ground that such statute as applied to complainant's lands impairs the obligation of a contract with the state exempting such lands from taxation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 820, 821.

Enjoining proceedings in state courts, see notes to Garner v. Second Nat. Bank, 16 C. C. A. 90; Central Trust Co. v. Grantham, 27 C. C. A. 575; Copeland v. Brunning, 63 C. C. A. 437.]

2. CONSTITUTIONAL LAW—WHO MAY RAISE CONSTITUTIONAL QUESTIONS—TAXATION—EXEMPTION OF LAND—INTERESTS OF LESSEES.

An educational corporation, owning lands which by a contract with the state are exempted from taxation, may maintain a suit in equity to restrain the officers of the state from levying and collecting taxes on improvements made on such lands by lessees, which by the terms of the leases become part of the realty, to be paid for by the landlord on the termination of the leases; such taxes being in effect against the lands themselves, and in any event in direct diminution of their rental value.

3. SAME—IMPAIRMENT OF CONTRACT—ERRONEOUS CONSTRUCTION OF STATUTE.

Where officers of a state are prosecuting proceedings under a state statute relating to taxation, the effect of which will be to impair the obligation of a contract, the right of a party to such contract to invoke the jurisdiction of a federal court for the protection of his constitutional rights is not affected by the fact that such officers may be proceeding upon an erroneous construction of the statute, and that, properly construed, it is not unconstitutional.

4. COURTS—FEDERAL COURTS—JURISDICTION—ACTIONS AGAINST STATES.

An action by a university, whose lands are exempt from taxation, against officers charged with the duty of levying and collecting taxes, to restrain such officers from enforcing taxes on improvements erected by lessees on such exempt lands, is not a suit against the state, so as to exclude the jurisdiction of the federal courts.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 844½.

Federal jurisdiction of suit against state, see note to Tindall v. Wesley, 13 C. C. A. 165.]

**5. SAME—CONFLICTING JURISDICTION OF STATE AND FEDERAL COURTS—ENJOINING STATE COURT ACTION.**

Nor can such suit be considered one to enjoin the action of a state court, on the ground that the tax officers are charged with judicial functions.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 1418.]

In Equity.

Spears & Lynch, Crownover & Crabtree, A. T. McNeal, and J. J. Vertrees, for plaintiff.

Lynch & Phillips, Charles T. Cates, Atty. Gen., and Thos. B. Lytle, for defendants.

CLARK, District Judge. In the study of this case it is found that the industry of eminent counsel on both sides has accumulated such a number of cases in the briefs as to make it impracticable to restate or to rediscuss these cases in this memorandum opinion without extending its limits beyond all reasonable length. In this situation I deem it sufficient to assure eminent counsel that I have examined the cases and have undertaken to give them the consideration which they deserve, in view of their bearing on the issues presented in this case for determination. Under such circumstances I shall content myself with a simple reference to some of the cases which seem to me to support and to require the ruling which is about to be made on the issues here to be disposed of.

It is probably best in the outset to remark that, so far as the lessee complainants are concerned, there is no statute of the state confessedly which has undertaken to exempt them from taxation, and their contention, consequently, does not and cannot involve a federal question such as to give this court jurisdiction; and this view makes it immaterial to consider whether the case as to each of these complainants would show a jurisdictional amount sufficient to sustain jurisdiction, for I think it is certain, upon the authorities, that the amount connected with the complaint of each one of these lessees is a separate matter, and that their several complaints could not be aggregated or put together to make up jurisdictional amount. However this may be, as just suggested, I do not now find it necessary to decide. There is, as to them, really no substantial federal question. And the second ground of the demurrer is special and separate against the complainants other than the University of the South, and is accordingly sustained, and all other grounds assigned in the demurrer, and the demurrer as a whole, so far as it applies to the University of the South, is overruled, for reasons which will sufficiently appear in the further statements of this memorandum opinion.

The first objection is that the bill presents no federal question, and that there is a want of federal jurisdiction, as distinguished from state jurisdiction. However, upon a careful study of this question, I am unable to accept the views so cogently presented by the able counsel on behalf of the state's revenue collecting and tax assessing officers. Reference may be made to the following cases: Bank of Kentucky v. Stone (C. C.) 88 Fed. 383; Union & Planters' Bank v. City of Memphis, 111 Fed. 561, 49 C. C. A. 455; Illinois Central Railroad Co. v. Adams, 180 U. S. 28, 21 Sup. Ct. 251, 45 L. Ed. 410; City Ry. Co. v. Citizens' Railroad Co., 166 U. S. 557, 17 Sup. Ct. 653, 41 L. Ed. 1114.

The case of Hamilton Gaslight Co. v. Hamilton City, 146 U. S. 258, 13 Sup. Ct. 90, 36 L. Ed. 963, is relied on by the defendants' able counsel as supporting the proposition that there is a want of federal jurisdiction. It must be remembered, however, that there was in that case a contention that there was no statute of the state of Ohio which furnished authority or color for the city in the enactment of the ordinance in question, and it was said in reference to this that a municipal ordinance not passed under supposed legislative authority could not be regarded as a law of the state, within the meaning of the constitutional provision against impairing the obligation of contracts. The court, after recognizing the soundness of this contention as a general proposition of law, proceeded to say distinctly that federal jurisdiction was sustained because it appeared that the defendant grounded its right to enact the ordinance in question upon a certain section of the Municipal Code of Ohio, as found in the Revised Statutes of Ohio, and it was held that the circumstance that the ordinance was passed under the authority or color of that section raised a federal question, and gave to the federal courts jurisdiction. This case was distinguished in this respect in the case of American Waterworks & Guarantee Co. v. Home Water Co. (C. C.) 115 Fed. 171.

Now, in the case at bar the entire tax proceeding on its face, and in every step of the procedure from first to last, is based obviously and expressly upon the revenue act of 1903 (Acts 1903, p. 599, c. 257) passed by the General Assembly of the state of Tennessee, and I think under the authorities the existence of a federal question here cannot be successfully denied, and that the court possesses jurisdiction as between the University of the South and the defendants; and I conclude the position which is suggested, rather than argued, that this is a suit against the state, is not maintainable, and just in this connection I may refer to the contention that, while the tax proceeding is expressly and avowedly under the act of 1903 in its different provisions as authority for the tax, still the tax proceeding and judgment would be good, if such a proceeding can be maintained and such a tax laid or assessed under any other provision of law, and under any other classification of the property of the lessees as personalty, or otherwise. I am sure that defendants' very able and thoughtful counsel will agree that it would be extremely embarrassing for the court to go entirely outside of the case, as made in the tax proceeding clearly and expressly, and also in the pleadings, and inquire whether or not the tax proceeding was illegal and void, and whether or not, if found to be so, it could be sustained upon other grounds and other provisions of law different from those under which the proceeding was clearly conducted, and which proceeding is sought to be enjoined by the pleadings in this case, which pleadings present exactly the same issues and questions as those which arose on the tax proceeding on its face. I do not think this can be done. Ogden City v. Armstrong, 168 U. S. 224, 18 Sup. Ct. 98, 42 L. Ed. 444. Such an inquiry as that of going outside of anything that appears on the face of the tax proceeding, or in the pleadings which present the case for the court's ruling, would manifestly be to make the case turn on issues partly of law and partly of fact entirely dehors the proceeding. It would be to consider issues that do not arise on the face of the act of the Assembly, nor, again,

in the tax proceeding expressly under color of the authority of that act, nor, again, in the pleadings which make the case for decision.

In this same connection reference may be made to the case of University v. Skidmore, 87 Tenn. 155, 9 S. W. 892, the decision in which eminent counsel insist should be read into the revenue act, and so considered as if it appeared in the very face of the act, and in consequence of which it is said the constitutional invalidity of the act would appear. This, however, would be again to go outside of the record, and if the law declared in the Skidmore Case were read into this act the situation would still be that the act would be contradictory on its face, in that it expressly and clearly declares what property shall be taxed and what shall be exempt, and then declares in positive terms that there shall be no other exemption. Furthermore, whether or not the Skidmore Case could be relied on would involve an inquiry into the nature of the lease contracts, and a construction of those contracts, and whether the lease contracts relate to parcels of property within the 1,000-acre exemption, or, again, possibly whether or not the interest of the lessees could, as matter of law, be separated from the general fee and general ownership, so as to become the subject of taxation in the hands of the lessee. These questions would give rise in any case, and in as many cases as may occur in the future, to lawsuits of serious difficulty, and unless the University of the South can protect itself by injunction, as it is now seeking to do, it seems evident enough that it will be subjected to a lawsuit in respect of each and every lease contract which it makes. If it should stand by until the tax proceeding is carried to completion, the tax record then on its face, and on the face of all that might be considered, would confer upon the purchaser at the tax sale a title, to defeat which it would be necessary for the University of the South to bring suit, or to be sued, and then set up its exemption from taxation, as broadly declared in the Skidmore Case. The tax proceeding would obviously prevent handling the property on the market so long as it existed, and would injure its market value and its rental value, and its validity would depend on matters entirely outside of the tax record as made up, and on which the tax title would rest. If we may assume that the University of the South has as many as 50 lessees, it would involve it in as many as 50 separate lawsuits to protect its property and to maintain practically its value to it for renting or for other uses. It would involve it in lawsuits with tax purchasers at the tax sales, and would, of course, unless it should protect its tenants and lessees, cause a rental loss on account of the fact that such lessees and tenants would refuse to be involved in litigation in connection with the title, the ownership of which might be regarded as doubtful. In view of these and some other points which might be suggested, I conclude, without difficulty or misgiving, that the University of the South has a constitutional right to maintain a bill to protect its exemption contract against impairment. Under the common law, and under the common law as expounded in this state by repeated decisions, the taxes assessed on real estate during the lease fall upon the landlord, in the absence of any express stipulation to the contrary, and it is an obligation resting on the landlord constantly to keep down and to pay such taxes and

to protect the lessee in his possession against disturbance or interference by tax proceedings.

In view of the averments of the amended bill, which must be taken as true on this application and in hearing the demurrer, the University of the South is resting under this common-law obligation toward its lessees to pay this tax, if it can be lawfully assessed; and under such circumstances a tax against the lessees is, for all substantial purposes and in fairness, a tax on the rents and a debt against the landlord on account of property which the state has by contract exempted from taxation. It can make no difference in substance as to the form in which the tax is laid. It finally falls upon the landlord, under his obligation, to pay, or necessarily under a diminution of the rental value of the property, and the fact that the result in a given case may come about indirectly, instead of directly, is not material. It is the substance and the necessary effect of what is done, and not the form of it, that must be regarded in administering substantial justice. It is obvious enough that a tax upon the rent for the use of land is a tax on the land itself. Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, 15 Sup. Ct. 673, 39 L. Ed. 759; Mosely v. State, 115 Tenn. 52, 86 S. W. 714. And, indeed, it is obviously plain that a tax laid or assessed against a tenant or lessee is a tax upon the land and against the landlord, in the absence of express stipulations which change the result. If the state and county might assess a tax against these buildings and improvements as personalty under a classification and under tax proceedings appropriate to that view of the situation, it seems clear enough that this has not been done, or attempted to be done, by anything in the legislation of the state, and certainly not by anything in this tax proceeding which can be regarded as at all apt or appropriate to such a classification of property and such a procedure. It would be necessary in such legislation as that, and in such procedure under it as might be adopted, to so express and so restrict the legislation as to show a clear intention to classify and to tax the improvements of the lessees only, and to make it a charge upon such improvements only, and not on the fee general.

This is all that it is positively necessary to decide in relation to this point made in the discussion; but I do not think that the state, under the broad doctrine of the Skidmore Case, is at liberty to adopt this method of laying a tax on the improvements or supposed interests of the lessees. Under the terms of the lease contract, I conclude that the improvements cannot be separated or segregated from the land, and that the lessees possess no interest which can be separated from the general fee. The lessees, under a proper construction of the contract, are entitled, at the expiration of the lease, either to a renewal of the lease in accordance with the terms of the lease, or to an appraisement of the value of the improvements, at which the University of the South is required to pay for the improvements if the renewal is not made. As matter of law the lessee could not and cannot, over the objection of the University of the South, at any time remove these improvements, and if the University of the South should refuse to renew the lease, and should then in bad faith, or otherwise without good cause, refuse an appraisement, the remedy of the lessee would be to sue the University

of the South to recover damages for the value of the improvements, which should, under the contract, have been fixed by appraisement. This right would accrue only when the University of the South would defeat the right of appraisement and substantially deny that remedy to the lessee. Both parties would in such an event as that be relegated to their common-law rights, and a right to remove permanent buildings, which is not one that belongs to the lessee at the common law. I conclude that the case of Luttrell v. Knox County, 89 Tenn. 257, 14 S. W. 802, is essentially and substantially distinguishable from the case at bar, and that its bearing on the issues here determined is not sufficiently material to affect the result.

As I have already stated, I regard the doctrine of the Skidmore Case as broadly declaring the exemption of the University of the South from any form of burden or taxation, direct or indirect, in respect of the 1,000-acre exemption. I think that decision is obviously just and fair in principle. In regard to an educational institution of so much value to the state and to the South as the University, the state's exemption should be construed with entire fairness and justice, not to say liberally, and it is not like an exemption in favor of a private corporation organized for the promotion of strictly private interests and for money gain. This is true in principle, regardless of what any case may say upon the subject. I conclude upon the case as a whole, as already intimated, that the University of the South has the right to maintain this bill to protect its exemption contract from unconstitutional impairment by the state. I conclude, as already stated, that this is not a suit against the state, and that the injunction is not one to enjoin a court of the state, which is another point made in the defense.

I think the trustee, in the proceedings had before him, was engaged in the mere ministerial execution of the provisions of the statute of the state, and, of course, incidentally he determines whether the statute of the state is applicable; but this does not constitute his functions judicial, nor his position in the matter that of a court, in the sense of section 720 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 581]; and this court must, of course, determine for itself what is a state court within the meaning of that section of the Revised Statutes. . Western Union Tel. Co. v. Myatt (C. C.) 98 Fed. 335. His position is substantially that of a ministerial officer, or, at most, that of an executive or administrative board charged with the execution of a statute. The fact that he might incidentally exercise quasi judicial power would not change the result.

The proposition that the court possesses jurisdiction on the equity side to prevent a multiplicity of suits, and to prevent a cloud being cast upon the title of the University of the South, is supported by Ogden City v. Armstrong, supra, and Wilson v. Lambert, 168 U. S. 611, 18 Sup. Ct. 217, 42 L. Ed. 599.

I return for a moment to the contention on behalf of the defendants that the revenue act of 1903 should be read and construed in the light of the Skidmore Case, just as much as if the doctrine of the Skidmore Case were declared in the act, and that the act as thus construed would not and could not apply to the University. It should be further remarked, in regard to this contention so earnestly pressed on behalf of

the defendants, that the revenue officers are presumed to know the law and the doctrine of the Skidmore Case. Furthermore, the situation must be looked at, not in a strained or theoretical method, but under a practical and substantial view, and it is hardly to be doubted that these revenue officers, in a matter of such importance and delicacy, are acting under the advice of eminent counsel, and that they are construing this act as authorizing the tax which is being assessed against this property, notwithstanding the doctrine of the Skidmore Case. If the Skidmore Case were read into the act, as counsel contend it should be, and the state, through either its judicial or executive departments, should still construe and enforce the act as authorizing the tax proceeding here in question, this would be unconstitutional, and furnish foundation for the relief sought, notwithstanding the courts should conclude that the construction being put upon the statute and the method of its execution were not in accordance with a proper interpretation of the state statute.

In the case of Chicago, Burlington, etc., Rd. v. Chicago, 166 U. S. 226, 17 Sup. Ct. 581, 41 L. Ed. 979, in reference to a similar view that the Constitution of Illinois on its face did not violate the fourteenth amendment, the Supreme Court of the United States, speaking by Mr. Justice Harlan, said:

"It is not contended, as it could not be, that the Constitution of Illinois deprives the railroad company of any right secured by the fourteenth amendment; for the state Constitution not only declares that no person shall be deprived of his property without due process of law, but that private property shall not be taken or damaged for public use without just compensation. But it must be observed that the prohibitions of the amendment refer to all the instrumentalities of the state, to its legislative, executive, and judicial authorities, and, therefore, whoever by virtue of public position under a state government deprives another by any right protected by that amendment against deprivation by the state 'violates the constitutional inhibition; and as he acts in the name and for the state, and is clothed with the state's power, his act is that of the state.' This must be so, or, as we have often said, the constitutional prohibition has no meaning, and 'the state has clothed one of its agents with power to annul or evade it.' Ex parte Virginia, 100 U. S. 339, 346–347, 25 L. Ed. 676; Neal v. Delaware, 103 U. S. 370, 26 L. Ed. 567; Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220; Gibson v. Mississippi, 162 U. S. 565, 16 Sup. Ct. 904, 40 L. Ed. 1075. These principles were enforced in the recent case of Scott v. McNeal, 154 U. S. 34, 14 Sup. Ct. 1108, 38 L. Ed. 896, in which it was held that the prohibitions of the fourteenth amendment extended to 'all acts of the state, whether through its legislative, its executive, or its judicial authorities'; and, consequently, it was held that a judgment of the highest court of a state, by which a purchaser at an administration sale, under an order of a probate court, of land belonging to a living person who had not been notified of the proceedings, deprived him of his property without due process of law, contrary to the fourteenth amendment."

This view may be further illustrated by reference to In re Thomas, 31 C. C. A. 80, 87 Fed. 453. In that case the governor of the Soldiers' Home of Dayton, Ohio, had been arrested and convicted before a magistrate in the state of Ohio and sentenced to pay a fine and to be imprisoned until such fine was paid. The prosecution was instituted and complaint and affidavit made by the dairy commissioner of Ohio under a statute regulating the use of oleomargarine. The governor of the Soldiers' Home, on writ of habeas corpus, was discharged by Judge Taft, and the order discharging the defendant from

custody was affirmed by the Circuit Court of Appeals in a court opinion found at page 87 of 31 C. C. A., and page 453 of 87 Fed. The Circuit Court of Appeals gave the opinion that upon a proper construction of the statute of Ohio it did not and could not apply to the use of oleomargarine at the Soldiers' Home. The Circuit Court of Appeals, in reference to this point, said:

"With respect to the question of law involved, we concur in the reasoning upon which Judge Taft's opinion proceeds (and which we are content to adopt as our own), and in the conclusion which he reached, save that we prefer to rest our approval of the order made by the court below upon the ground that, inasmuch as the Legislature of Ohio had no power to regulate the conduct of this administrative agency of the national government by such a statute as is here in question, it ought to be presumed that the Legislature did not intend it to have such an application, and that the statute should be construed accordingly."

The case was carried on appeal to the Supreme Court of the United States, and the judgment below affirmed. Ohio v. Thomas, 173 U. S. 276, 19 Sup. Ct. 453, 43 L. Ed. 699. The Supreme Court of the United States, in disposing of the case and discussing the issues, called attention to the fact that the dairy commissioner and the justice of the peace of Ohio were actually construing the law and enforcing it, or attempting to enforce it, as being applicable to the Soldiers' Home, and that court wholly ignored the view that upon a proper construction of the statute it did not so apply. As the state was, through its judicial department and its executive officers, actually enforcing the statute as applicable, that court broadly declared the statute unconstitutional and pretermitted any reference whatever to the view that the statute did not apply to the Soldiers' Home, if properly and fairly construed.

And so here, if in the light of the Skidmore Case the revenue act of 1903 could not and should not be construed as applying to any interest or right of the University, or as affecting its exemption, still the fact practicallly is that the state, through its revenue officers, is actually enforcing and construing the statute in such a way as to make it applicable to the 1,000-acre exemption on the lands of the University, and in such a way that it will or may affect the title and interest of that University and cast upon it a cloud which will require litigation for its removal. This discussion, however, must not be prolonged further.

The injunction applied for will accordingly be allowed in favor of the University of the South alone against any further proceedings by the defendants against any and every lessee and tenant of the University of the South occupying parcels or parts of the 1,000 acres belonging to the University of the South. The order can be drawn and made to run in apt and appropriate language and form, and is allowed accordingly. The complainant lessees will, of course, pay the cost of the cause so far as that is incident to their having been made parties, as the result is, as to them, final. Of course, it results from these views that the court concludes that the revenue act of 1903, so far as the University of the South is concerned, is in violation of both the state and federal Constitutions.